In re Arthur W. DYKE, Jr. and Judith Ann Dyke, Debtors (Two Cases).

Bankruptcy Nos. 81 B 12207, 86 B 996.

United States Bankruptcy Court, N.D. Illinois, E.D.

Feb. 19, 1986.

Leonard M. Groupe, Groupe & Katz, Chicago, Ill., for debtors.

## MEMORANDUM AND ORDER ON DEBTOR'S MOTION TO DISMISS

JACK B. SCHMETTERER, Bankruptcy Judge.

Debtors filed their joint petition in No. 81 B 12207 under Chapter 13 on October 2, 1981, and their plan was confirmed on February 22, 1982. The plan period was extended to 42 months from confirmation date on April 23, 1984, because of delinquent payments which were a result of Judith Dyke's hospitalization. On December 5, 1985, debtors obtained an Order extending the plan to 60 months from date of confirmation and a waiver of current defaults.

Debtor's counsel moved as an "emergency motion" to dismiss debtors' 1981 case on January 23, 1986. The attorney stated that debtors were in divorce proceedings and Arthur Dyke had discovered that Judith Dyke had not been making payments on the mortgage, car loan, or to the trustee. He further stated expressly that he wanted to dismiss that case before creditors presented motions imminently anticipated to modify the stay so that a new Chapter 13 could be filed which would not come in conflict with recently enacted Bankruptcy Code § 109(f). The motion to dismiss was further heard on January 28, 1986, at which time debtors' counsel revealed that the new Chapter 13 case (No. 86 B 996) was filed by these debtors even before the motion was presented in the old case. Therefore they presently have two Chapter 13 cases pending. The discussion before the bench on both dates is, in pertinent part, appended to this opinion.

For reasons stated below pertaining to bad faith and otherwise, case No. 86 B 996 will be dismissed and case No. 81 B 12207 will be dismissed as debtors seek therein but on the Court's injunction not to refile any Chapter 13 case in any court for 180 days from this date except on prior leave from this Court on a showing of changed circumstances. This Court disagrees with counsel for debtor who argued (Tr. January 28, 1986) that such an order is "inappropriate under the circumstances and under the procedures and practices that have been following (sic) in this district for many years...." If what has happened in this case has indeed been common practice in this District, it is time to question that practice.

### Discussion

The ability of a debtor to dismiss his case voluntarily differs between Chapters 7 and 13. Under § 707(a), a Chapter 7 debtor may only dismiss his case for "cause". Such provision gives the Court discretion to prevent the dismissal. In contrast, Chapter 13 allows no discretion to the Court, and debtor may dismiss the case at any time if it was not previously converted from Chapter 7 or Chapter 11. See 11 U.S.C. § 1307(a), (b). The leniency provid-

ed by § 1307(a) opens the door to abuse of the bankruptcy system through multiple filings and dismissals which invoke the automatic stay and prevent creditors from exercising their potential rights.

Congress sought to prevent abuse of the Bankruptcy system through multiple filings by enacting § 109(f). *In Re Nelkovski*, 46 B.R. 542, 543 (Bankr.N.D.Ill., 1985). Pursuant to § 109(f) an individual may not be a debtor under Title 11 if he has been a debtor in another bankruptcy case during the preceding 180 days and the case was dismissed by the Court for wilful failure to abide by Orders of the Court, failure to appear in proper prosecution of the case, or debtor voluntarily dismissed the case following the filing of a motion to lift the automatic stay.

This case before the Court does not involve a second prior petition[1] but rather the dismissal of a first petition in anticipation of motions to lift the stay and a stated intent to file immediately thereafter a new Chapter 13.[2] Indeed, the new case was filed even before the motion was presented to dismiss the old case.[1]

The purpose of these tactics appears to be two-fold: First, to circumvent the sanctions imposed by § 109(f) and Congressional intent in enacting that provision; and second, by the magic of a new filing to change unpaid post-petition debts in the first case into pre-petition debts in the second case, thus avoiding the anticipated consequences of nonpayment through motions to modify stay.

Debtors are now about four years into their confirmed plan. Therefore, through this tactic they seek to remain in Chapter 13 up to five more years (for a total of nine years) while Congress has fixed a maximum of only five years to complete Chapter 13 plans. Further, because payments due under the plan were not paid in the earlier case, debtors seek through the al-

chemy of bankruptcy and their filing of a new case to convert delinquent post-petition debts in the first case into pre-petition debts in the second case.

Courts often have had to determine whether multiple filings were in "bad faith" and constituted an abuse of the bankruptcy process. The Courts which have found no abuse have based their decision on a finding that there were "changed circumstances". See *In Re Johnson*, 708 F.2d 865 (2nd Cir., 1983) (debtor lost her job and was caring for her ill mother); *In Re Bumpass*, 28 B.R. 597 (Bankr.S.D.N.Y., 1983) (debtors income increased sufficiently to fund a new plan); *In Re Artishon*, 39 B.R. 890 (Bankr.Minn., 1984) (divorce in interim and debtor had increased income to fund new plan and cure arrearages in reasonable time).

The Bankruptcy Court in *In Re Bolton*, 43 B.R. 48, 50 (Bankr.E.D.N.Y., 1984) added an additional condition to the "changed circumstances" standard in that the debtor is also required to show good cause why he did not seek relief from the obligations under the prior plan before dismissal (i.e. modification under § 1329). In *Bolton*, debtor's first Chapter 13 petition was dismissed by the Court for failure to appear. A second Chapter 13 petition was filed two months later and subsequently dismissed by debtor after the Court granted the mortgagee's motion to lift the stay. One week later, debtor filed a third petition.

On the mortgagee's motion to dismiss in *Bolton*, the debtor argued "changed circumstances" in that the defaults under the second plan occurred because of "marital problems" and "two kids in college" which were a financial drain. Debtor testified that at the time the third petition was filed, his family was together and the children were out of college. However, the Court dismissed the case by holding that debtor had merely made bald assertions without

---

**1.** Debtors' attorney admitted that he signed a new petition and that it was filed "through inadvertance" by a clerk from his office. (Transcript 1/28/86 Hearing, pp. 6–7). For reasons set forth below, the second petition will be dismissed by the Court because it was filed in bad faith.

**2.** See Transcript 1/23/86 Hearing, pp. 2–3.

producing hard evidence (i.e. checks, invoices) to establish that the circumstances which caused the defaults to occur during pendency of the second plan no longer exist. *Id.* at pp. 51–52.

Other Courts which have dismissed subsequent proceedings have found that the petition was filed solely for the purpose of invoking the automatic stay to prevent a foreclosure sale which arose from an order lifting the stay in the prior proceeding. Once the stay is lifted, the creditor is entitled to proceed and "[t]he debtor cannot capriciously and vexatiously stall the creditor from exercising the rights which have been obtained through extensive litigation in both federal and state court". *In Re Bystrek*, 17 B.R. 894, 895 (Bankr.E.D.Pa., 1982).

In *In Re Roderick*, 20 B.R. 485 (Bankr. R.I., 1982), debtors filed a Chapter 13 petition on the day of a scheduled foreclosure sale. The plan could not be confirmed and the case was converted to Chapter 7. The stay was lifted to allow the foreclosure to proceed and debtors were granted a discharge. An hour before the foreclosure sale was to take place, debtors filed a second Chapter 13 case. The Court found debtors conduct to be unjustified harassment of creditors in that they filed two proceedings within hours of the scheduled foreclosure sales and did nothing to comply with the good faith required to obtain the protections provided by Chapter 13. *Id.* at 486.

The cases exemplified above are factually dissimilar to the case before the Court because they involve rulings following the filing of a subsequent petition. Here, debtor is seeking dismissal of his first case with a stated intent to file another petition to invoke the automatic stay and a refiling even before the first case was dismissed. Though the authority cited above was dissimilar, those cases stand for the proposition that subsequent filings merely to invoke the automatic stay without a showing of changed circumstances is an abuse of the Bankruptcy process.

Several cases illustrate abuse, albeit not under the precise facts present here. In *In Re Wong*, 30 B.R. 87 (Bankr.C.D.Calif., 1983) the husband filed a Chapter 11 proceeding in one Bankruptcy Court. That proceeding failed to stop a mortgage foreclosure, and his wife then filed a Chapter 13 proceeding in another Bankruptcy Court on the eve of foreclosure. *In Re Nimmo*, 39 B.R. 5 (Bankr.N.Mex., 1984) involved the filing of a second petition one day after the first case was dismissed. The second petition revealed a decrease of $15,900 in assets without providing an explanation for the loss or the reason for not amending the schedules to reflect such loss in the first proceeding. The above cases demonstrate that multiple filings which merely use the automatic stay for purposes of stalling a creditor, without any further litigative purpose, are abuses of the Bankruptcy process.

This Court has *sua sponte* considered whether it should condition the requested dismissal of the first (1981) petition by preventing a future Chapter 13 filing for a limited period of time. That question was raised by the Court because the debtors' counsel here expressed intent to re-file immediately so as to avoid a motion to modify stay in the earlier case, and because he filed the new case even before moving to dismiss the old case.

Congress enacted § 109(f) for the purpose of preventing abuse of the bankruptcy system by debtor's dismissal of a proceeding following the filing of a request to lift the stay. Debtor's attorney has clearly stated to the Court that he wants the case dismissed before motions can be filed by creditors who have not been paid during pendency of the first case. He even filed the second case before presenting his motion to dismiss the first. In this circumstance, this Court finds that the legislative history of § 109(f) read in conjunction with § 349 and § 105 apply to prevent the immediate re-filing of the new case. This case illustrates a blatant attempt to circumvent the Congressional effort to prevent abuse of the system. It demonstrates bad faith on behalf of debtors in abusing their oppor-

tunities under Chapter 13 of the Bankruptcy Code.

The Bankruptcy Code has provisions that provide the Court with the authority to enjoin a subsequent filing in this case.

As discussed above, debtor seeks dismissal of the 1981 case in order to win a race to the Courthouse with creditors intending to file motions to modify stay. Debtors hope thereby to by-pass the sanctions imposed by the Code. Under § 105(a), "[t]he Court may issue any order process, or judgment that is necessary or appropriate to carry out the provisions of this title." Though this case was filed in 1981 and is not subject to § 109(f), that provision was enacted in response to perceived abuses of the system. § 105 has been used to impose monetary sanctions against debtor and her attorney for multiple filings (*In Re Jones*, 41 B.R. 263 (Bankr.C.D.Calif., 1984)); and against debtors and their attorney for intentionally distorting their financial status (*In Re Proia*, 35 B.R. 385 (Bankr.R.I., 1983)).

In *In Re Bradley*, 38 B.R. 425 (Bankr.C.D.Calif., 1984) the Court utilized § 349 to enjoin debtor from filing another petition within six months except with leave of Court. Debtor had filed four petitions between August, 1982, and November, 1984.

Pursuant to § 349(a), dismissal of a case is without prejudice "[u]nless the Court, for cause, orders otherwise...." The *Bradley* Court read this introductory phrase to provide the Bankruptcy Court with the power to enjoin filing a later petition for a specific period of time.

■ The foregoing cases and applicable law indicate that, where the Court finds justification, authority exists under either § 105 or § 349 to dismiss debtors' case but at the same time enjoin the filing of another case for six months. The additional language used by the *Bradley* Court, "except with leave of Court", is appropriate so that debtor has the opportunity to come before the Court to explain any change in circumstances which would justify permitting another petition to be filed prior to expiration of the enjoined time period.

### Conclusion and Order

The U.S. District Court for the Eastern District of New York gave a clear insight into the actions and attitudes of certain debtors and their counsel in a case similar to this:

"The troubling aspect of this case is that debtor's counsel seems to believe that Bankruptcy Court is a legal playground where the debtor can indulge in an elaborate game of catch me if you can with her creditors. Such is not the case. Although the law grants a generous measure of relief to debtors, this benefit is not gratuitous. The law also imposes a measure of responsibility. As a member of the bar and an officer of the court, counsel especially should be aware of this fact. The game attempted in this case cannot be permitted. (Debtor's motion) admits that the present Chapter 13 petition was filed in an attempt to stay a properly brought sheriff's sale. By filing the new petition, the debtor sought to re-impose the stay of lien enforcement provided by Section 362(a) of the Bankruptcy Code. The conduct of the debtor and her counsel cannot be condoned. It is a fraud upon the creditor and an affront to the integrity of the Court" *In Re: Bystrek*, 17 B.R. 894, 895–896 (Bankr.E.D.Pa., 1982).

For the foregoing reasons, the motion of debtor to dismiss Case No. 81 B 12207 is hereby granted effective this date but debtors and their attorneys are hereby enjoined for 180 days from this date from refiling under Chapter 13 of the Bankruptcy Code in any Court except on prior leave of this Court on a showing of changed circumstances. Further, the new case No. 86 B 996 is hereby dismissed as having been filed in bad faith.

Accordingly, case Nos. 81 B 12207 and 86 B 996 be and the same are each dismissed.

APPENDIX TO
MEMORANDUM OPINION

PARTIAL ABSTRACT OF RECORD

*January 23, 1986*

THE COURT: Counsel, this is a 1981 case and I am a little surprised to see—of course, you have the right to dismiss normally...

THE COURT: Is there any motion to modify the stay pending in this Court?

MR. GROUPE: No, sir. That's what we are racing to avoid.

THE COURT: What are you racing to avoid?

MR. GROUPE: A motion to modify.

THE COURT: Have you been served with a motion to modify?

MR. GROUPE: No sir; no, sir. This is a divorce situation where the man had just found out that his wife has not been paying the mortgage, has not been paying the car. And so what we are planning to do is immediately, upon dismissal of this case—in anticipation of motions—dismiss this case and re-file a brand new one.

THE COURT: A brand new what?

MR. GROUPE: Chapter 13.

MR. GROUPE: There were no motions—there were not motions—he has new debts which are not in this which are subsequent to this. He is not ineligible to file a Chapter 13. We are anxious that he not be subjected to the problems of Section 109. He has the right to dismiss at any time.

Having dismissed this case and not being subject to Rule 109, he can filed another Chapter 13 subject to the decision of the Court as to—upon objection whether or not it was filed in good faith ...

THE COURT: Counsel, what is the status of this old case? I mean, back in December I extended the plan at your request to 60 months.

MR. GROUPE: That's when we found out—

THE COURT: And I waived the default—

MR. GROUPE: That's when we found out there was going to be a problem, but we didn't realize the extent of the problem until the other day.

THE COURT: ... What is the state of your—how many more months would it be to complete the plan?

MR. GROUPE: Well, he has been seriously delinquent, but now we have—based on the orders that your Honor—in the petition that your Honor just indicated we are—we have extended the plan to 60 months. But the plan was seriously in default, but it's not in default because your Honor waived the current default.

THE COURT: This is all some sort of a game to dismiss this case and then re-file another case next week?

MR. GROUPE: No, sir. This is not a game. This is because of the problem—the domestic problem where Mr. Dyke has now found that his wife has not been making the payments, either to the—and has deserted the family ...

THE COURT: And you say one client whom you represent has just found out that his wife has not been paying—

MR. GROUPE: That the other has not been making the payments on the car, the house, or the trustee. And unless we take—in my professional opinion, unless we take action now, upon a motion by either the automobile company of finance company or the mortgage holder, and modify the stay, we will be unable to get the relief that we are—will be seeking from this Court or need from this Court to add the new debts to the old debts and pay them under an appropriate plan.

THE COURT: Well, I'm going to think about this....

THE COURT: I will call this on Tuesday at 9:30....

THE COURT: January 28th.

*January 28, 1986*

THE COURT: Well, I have—this Chapter 13 was filed in 1981. As I recall, the

Congress had a limit of five years on the plans—

MR. GROUPE: Yes, sir.

THE COURT: —in 1981, and still have a limit of five years on Chapter 13 plans. Therefore, the fifth year will expire this year.

As a matter of fact, on December 5 at your request, I extended the plan to 60 months from the date of confirmation.

MR. GROUPE: At that time the plan was in default. The debtor had asked the trustee move—to dismiss the case because the payments became in default.

THE COURT: Date of confirmation was February 22, 1982. Five years from that would be February 22, 1987, which is approximately a year—13 months from now.

What you told me when you made this motion or when you gave me the unsigned copy of this motion was that you were about to refile another Chapter 13 plan as soon as this one is dismissed. And I asked you whether this was some sort of a game.

MR. GROUPE: If it were a game, your Honor—we just wanted to dismiss this. At the time the trustee moved to dismiss, all we had to do was sit silent and the case would have been dismissed. But at that time we didn't want to play games. We wanted to keep this case going because we were unaware of the fact that there were new additional creditors that had to be paid by the debtor and couldn't be in this plan.

The debtor's wife—the debtor—has not been applying the money properly, has not been paying the car payment, has not been paying the mortgage.

All we knew at the time we came in to extend the plan was that the payments to the trustee were not being made. We corrected that, but now we have subsequently found that the car payments were not being made and the mortgage payments were not being made.

THE COURT: I did not find in here a motion by the trustee to dismiss. I don't find it on the docket.

MR. GROUPE: The trustee withdrew it.

THE COURT: ... You're trying to set up a dynamic here and what appears to me to be an abuse of the Chapter 13 system and structure and pattern of law so as to get yourself a total of 10 years or 9 years.

It seems to me that I just can't dismiss this case without entering an order restraining the debtors from refiling a Chapter 13 for a period of six months, and that's the order I'm going to enter.

MR. GROUPE: If your Honor please, to prevent—I believe that it's inappropriate under the circumstances and under the procedures and practices that have been following in this district for many years, your Honor.

They may be wrong, but I'm quite unaware. Rather than to have done this, I presume that the matter would be to file another Chapter 13. And in fact I found that through inadvertence the new case was filed the day before I presented the emergency motion. I was unaware of that.

THE COURT: Was it assigned to me?

MR. GROUPE: Of course.

THE COURT: Through inadvertence? Were you a lawyer on that case?

MR. GROUPE: I presume so, but it was through inadvertence. I entered my signature but it was through inadvertence. I was not aware—

THE COURT: You inadvertently signed a new case and filed it the day before you presented a motion to dismiss the old case?

MR. GROUPE: Your Honor, we do this—

THE COURT: —You do it all the time?

MR. GROUPE: No, we don't do it all the time. We sign them and the clerks file them and the clerk is supposed to wait until the proper time. I was embarrassed when I came back on the emergency motion and found that it had been filed the day before. The schedule had not been filed, just the original petition. But there's nothing to prevent two Chapter 13's at the same time.