In re Gary J. DILLEY, Debtor.

Bankruptcy No. B89–04629.

United States Bankruptcy Court,
N.D. Ohio.

Feb. 11, 1991.

Alexander Jurczenko, Cleveland, Ohio, for debtor.

Alan L. Melamed, Dinn, Hochman, King & Melamed, Mayfield Heights, Ohio, for State.

## MEMORANDUM OF DECISION

DAVID F. SNOW, Bankruptcy Judge.

Debtor commenced this case on November 9, 1989 by filing a bare chapter 13 petition without a chapter 13 statement, schedules or plan. Over the course of the next two months Debtor requested and was allowed four extensions of time to file these documents. Debtor finally filed them on January 8, 1990, six days after his last permitted deadline of January 2, 1990

and 60 days after the Debtor's petition was filed. None of these documents was signed as required by law.

The Debtor's schedules identified 28 creditors to whom the Debtor acknowledged owing $102,402.00 and a disputed claim of the State of Ohio ("Ohio" or the "State") in the amount of $98,199.00. The Debtor's plan called for payment of 100 percent of his unsecured debt and payments outside the plan to secured creditors. It provided for plan payments of $500 per month, substantially less than required to pay the undisputed claims within the 60 months permitted by law. However, the budget filed by the Debtor indicated that after expenses the Debtor had only $528 of disposable income with which to fund a plan.

The creditors' meeting was held on February 9, 1990 pursuant to section 341 of the Bankruptcy Code. On the same day, the State filed an objection to confirmation of the Debtor's plan. In that objection the State asserted that the Debtor owed it $120,832.44 for unpaid priority sales taxes and that the plan failed to provide proper treatment of its claim. The first confirmation hearing was scheduled for April 17, 1990 but was automatically adjourned under the Court's chapter 13 procedures to May 15, 1990 because the Debtor had not responded to the objections or requests for additional information contained in the Chapter 13 Trustee's recommendations made at the section 341 meeting.

The Chapter 13 Trustee reported at the May 15 hearing that the Debtor had still not responded to the Trustee's recommendations and that the plan could not be confirmed since the plan would, without any payment to the State, take 248 months to pay out, 188 months longer than the 60 months permitted by law. The Court expressed concern with this serious question of feasibility and the Debtor's failure to comply with the Trustee's recommendations. Debtor's counsel assured the Court that a feasible plan was possible since a $46,000 debt owing to his father would be eliminated and a monthly plan payment of $1,000 which would then be required could easily be made by the Debtor. He did not indicate why the Debtor's budget reflected the ability to pay only half that amount or why he had proposed a clearly insufficient plan payment, nor did he offer to commence plan payments in the amount he now believed to be appropriate. Although the Court was not so informed, it later appeared that the Debtor was two months behind in his plan payments at the time of the May 15 hearing.

Debtor's counsel minimized the significance of the State's claim, which he characterized as approximately $7,000 on a worst case scenario. The Debtor urged the Court to deny the State's objection because it had failed to file a formal proof of claim and because the State was not represented at the hearing. The Court declined to do so because the State's objection appeared to constitute a valid informal proof of claim and because the Debtor's plan was clearly not feasible without regard to the State's claim. The Court noted that the Debtor's failure to deal with the feasibility issue appeared to reflect lack of attention to his case and urged the Debtor to promptly object to the State's claims to bring that matter to a head. The hearing was adjourned to June 26. That June 26 hearing was subsequently rescheduled to August 23, 1990 at the request of the Debtor and the State.

On July 26 the Debtor attempted once again to delay the confirmation hearing. He filed a request for evidentiary hearing which recited that there were "numerous issues of fact and law in dispute" between the Debtor and the State and requested postponement of the confirmation hearing pending their resolution. On August 2 the Court entered an order in response to the Debtor's motion which ordered the Debtor to furnish not later than August 20, 1990 a concise statement of the contested legal and factual issues but which confirmed that the August 23 hearing would go forward as scheduled. The Court's order noted that these requirements were imposed on the Debtor in view of the delays already occasioned by the Debtor.

The Debtor's statement of legal and factual issues furnished in response to that order provided no clarification of his disagreement with the amount of the State's claims. It merely asked in the form of a question whether the State's claim was excessive. The Debtor did not identify in the filed statement or in his response to the Court's questions at the August 23 hearing any basis at all for questioning the accuracy of the State's claims. The Debtor did not excuse his nonperformance in this regard by the State's failure to comply with his discovery request. The only specific information ever presented by the Debtor on his contention that the State's claim was excessive was based solely on the Debtor's own records. This information was first presented in the Debtor's brief and supplemental objection to claim filed in September.

The August 2 order also imposed on the Debtor a discovery cutoff date of August 15. The State had advised that it did not intend to do any discovery. The August 15 cutoff was not enforced, however, since the State sought a protective order against further discovery. The Court denied the State's request but the State had already failed to appear at the deposition scheduled by the Debtor. The Debtor filed a motion seeking disallowance of the State's claim because of this failure. The Court admonished the State for its failure but denied the Debtor's motion as excessive because it appeared that the Debtor had failed not only to review his own records for the August 23 hearing, but had declined the opportunity to obtain discovery from the State prior to that hearing. Moreover, it appears that the Debtor used the State's failure to appear for the one deposition as an excuse for not promptly concluding discovery. As late as the December 4 pretrial the Debtor advised that he had not reviewed all the State's records. Subsequent to the August 23 hearing, however, the Debtor neither filed any motion to compel discovery nor complained of any failure by the State to cooperate with discovery.

In his opening statement at the August 23 hearing, Debtor's counsel advised the Court that he had been conferring since 8:30 that morning with counsel for the State; he requested that the hearing be adjourned to permit the State to provide him an assessment record and to allow the State to review Debtor's position with a view towards settlement. The State's counsel asserted, however, that the Debtor had presented nothing new for the State to consider. After the Court's efforts to elicit information from the Debtor to support his contention that the amounts claimed by the State were wrong proved futile, the hearing focused on the legal issues raised by the parties. Counsel for both parties agreed that the Debtor's contention that the State's claims were not timely filed and the State's contention that its claims were based on state proceedings, which the Debtor could not now reopen under the doctrine of res judicata, would be dispositive if either contention were sustained. Therefore the Court ordered the parties to promptly brief these arguments.

At that point in the hearing the Chapter 13 Trustee advised the Court that the Debtor had not only completely failed to respond to the Trustee's recommendations, even those that were not related to the State's claims, but that he was five months delinquent in his plan payments. The Debtor justified his failure to make payments because the State had attached his bank accounts, but said he had money to bring the payments current. The Court ordered that the payments be brought current by the end of the week or the case would be dismissed. The Court again advised the Debtor that it was not satisfied with the prosecution of the case and admonished the Debtor to be more diligent in its prosecution. The Court adjourned the hearing to September 5 for a status report.

At the September 5 hearing the Debtor reported that he had brought his payments current. The hearing was adjourned to October 30 at the Debtor's suggestion. He advised the Court that discovery should then have been completed and that this adjournment would afford him time to file and notice an appropriate modification to his plan. No modification was ever filed.

The October 30 hearing was devoted mainly to the res judicata issue since the Court ruled from the bench that the State's objection constituted an informal proof of claim filed within the bar date. Neither party's brief cited section 505 of the Code which the Debtor later asserted, and the State agreed, resolved the res judicata issue in the Debtor's favor. Absent that citation the arguments in the parties' briefs were inconclusive and the Court advised that it could not rule on the res judicata issue unless and until evidence was presented that the State's claim was excessive.

The Debtor had apparently made no further effort to resolve this question. In response to the Court's query of whether the State's records had been made available to him, Debtor's counsel responded that he had reviewed only a portion; that the balance had been delivered to Cleveland within the preceding 10 days and that he would look at them in the near future. By this time, however, Debtor had finally identified a specific factual contention in pleadings he filed in September—that the State had failed to credit some $70,000 of tax payments made by the Debtor.

Counsel for the State asserted, however, that all payments had been credited; that the State had provided the Debtor all applicable records; that the Debtor had simply failed to review the records made available to him and had presented no evidence to the State of any payments that had not been credited. He said, however, that the State had a representative in court from the tax department and that the State could and would promptly review any records of payments furnished by the Debtor. Counsel for the Debtor assured the Court that he had the Debtor's records with him and would furnish them to the State that day. The Court adjourned the confirmation hearing to January 8, 1991 and set a final pretrial date of December 4.

The Court's November 2, 1990 pretrial order required the parties prior to the pretrial to meet, to identify any factual disputes and to file a joint pretrial statement. However, the parties failed to file a joint pretrial statement. Their separate pretrial statements reflected only a rehash of the res judicata and late filing arguments with no follow-through on the question of whether the Debtor's payments had been properly credited. It appeared that the Debtor had again failed to provide the State evidence of the payments allegedly made but not credited. Counsel for the State asserted that the State had made all relevant records and materials available to the Debtor, that the Debtor had failed to examine them and that the State was ready, willing and able to try the case immediately. The Chapter 13 Trustee again reported that even if the State's claim were disallowed, the proposed plan was not feasible. By this time the Court had become thoroughly frustrated with the Debtor's failure to comply with the Court's orders to narrow the issues. To bring matters to a head, the Court scheduled the matter for trial 17 days later on December 21.

Fixing the trial date had the desired effect. The parties finally focused on the issues to be resolved. It appears that shortly before the trial date the Debtor discovered section 505 of the Code and the Debtor and the State agreed that it resolved the longstanding res judicata issue in Debtor's favor. On the eve of trial Debtor's attorney called the Court's law clerk to advise that the parties did not want to try the matter on December 21; that the State had agreed to do an audit which might resolve matters without trial. He advised that the parties would file a joint stipulation withdrawing the State's claim without prejudice and that this stipulation would deprive the Court of jurisdiction over the matter and moot the December 21 trial. The Debtor's stated intent was to go forward with a chapter 13 plan which would exclude any obligation to the State, although it appeared that some substantial amount was owed to the State. Under this scheme the Debtor would have the Court confirm an unfeasible plan and put off the trial on the State's claim, if necessary, to some indefinite time in the future of the Debtor's choosing.

At the Court's December 21 hearing the State acknowledged that it would subsequently file a substantial claim; that although an audit should resolve questions of payment or duplicate charges, the parties had reached no agreement which would obviate a trial at a later date. Neither party offered any justification for this attempt to evade the Court's authority to set a trial schedule beyond the Debtor's assertion that the joint stipulation deprived the Court of jurisdiction and authority in the matter. However, counsel had failed to read Bankruptcy Rule 3006 before employing this stratagem. That Rule provides in relevant part:

> If after a creditor has filed a proof of claim an objection is filed thereto or a complaint is filed against that creditor in an adversary proceeding, or the creditor has accepted or rejected the plan or otherwise had participated significantly in the case, the creditor may not withdraw the claim except on order of the court after a hearing on notice to the trustee or debtor in possession, and any creditors' committee selected pursuant to §§ 705(a) or 1102 of the Code. The order of the court shall contain such terms and conditions as the court deems proper.

The obvious purpose of requiring court approval for withdrawal of a claim where the creditor has substantially participated in the proceeding is to deny the parties the ability to effect the sort of manipulation attempted here. The Court disapproved the joint stipulation and adjourned the trial to January 16, 1991. Counsel for the State excused his role in this scheme by stating that he was unfamiliar with bankruptcy practice and procedure. He said that the January 16 trial date set by the Court afforded the State sufficient time to do its audit and go forward with its case. Debtor's counsel offered no excuse for ignoring Rule 3006. He did not, however, object to the January 16 trial date.

At the December 21 hearing over the Debtor's objection the Court again raised the question of feasibility. The Chapter 13 Trustee stated that based on the Debtor's estimates a feasible plan would require more than twice the disposable income re-flected in the Debtor's budget. The Court thereupon ordered the Debtor to provide evidence prior to the next adjourned confirmation hearing on January 8, 1991 that the Debtor could fund a plan based on allowing the State's claim at the Debtor's estimate.

Instead of complying with the Court's order to demonstrate feasibility, the Debtor filed the present motion to dismiss on December 28, 1990. Coming on the heels of the aborted stipulation to dismiss the State's claim without prejudice, Debtor's motion to dismiss his case suggested that his intent was again to avoid the trial date for the State's claim and the Court's order to demonstrate that at least a minimally feasible plan was within the Debtor's grasp, but then to refile another case and deal with these issues on his own timetable.

This concern was expressed in the Court's order of January 3, 1991 on the Debtor to appear and show cause at a hearing on January 15, 1991 why his case should not be dismissed with prejudice. At 4:52 p.m. on January 14, Debtor filed a 17–page response to that order styled "Statement of Facts By Debtor Contra to 'History' of Case Recited in the Order on Debtor to Appear and Show Cause Dated January 3, 1991" (the "Response"). At the hearing the next morning Debtor stated that his answer to the show cause order was set forth fully in his Response and he declined the opportunity to present evidence on the question.

At that hearing the Debtor advised that he had filed a notice of appeal in respect of the Court's show cause order. He did not, however, request a stay of the show cause hearing. Since the Debtor appeared at the hearing and filed the 17–page Response, which he characterized as fully setting forth his position, he has complied with the show cause order; no further performance is required of him.

But assuming that this appeal is not moot, which is for the District Court to decide, there is no reason why the Debtor's appeal of the show cause order can or should preclude the Court from acting on

Debtor's motion to dismiss. Bankruptcy Rule 8005 provides in relevant part:

> Notwithstanding Rule 7062 but subject to the powers of the district court and the bankruptcy appellate panel reserved hereinafter, the bankruptcy judge may suspend or order the continuation of other proceedings in the case under the Code or make any other appropriate order during the pendency of an appeal on such terms as will protect the rights of all parties in interest.

The Debtor has insisted on dismissal of his case. The fact that dismissal is with prejudice does not impair the Debtor's appeal of the show cause order or his right to appeal this Court's order of dismissal with prejudice. Certainly no other party will be prejudiced by the Court's dismissal order. If the District Court views this matter differently, it has the authority under Rule 8005 to instruct this Court appropriately. If it does not, the Court's present order may prevent the Debtor from securing additional delay on the flimsiest of pretexts. *See In re Odom Enterprises, Inc.*, 22 B.R. 785 (Bankr.E.D.Ark.1982).

Based on the record, the hearings and other proceedings in this case, and after reviewing Debtor's Response the Court finds that the Debtor has throughout the course of this case failed to diligently prosecute his case or timely or fully comply with orders of this Court with the result that the prosecution of this case has been unreasonably delayed. This pattern began at the inception of the case when after four extensions the plan, statement and schedules were filed late and were unsigned. It continued with the Debtor's repeated failures to respond to the Chapter 13 Trustee's recommendations, in particular the fact that Debtor's plan was not feasible either when filed or at any other time, even if the State's claim was disallowed. As a result the Debtor will have delayed payment to his creditors for fourteen months by making payments to the Chapter 13 Trustee in amounts much lower than required to fund a feasible plan and without having shown that he was capable of funding a feasible plan. Since the payments he did make will be returned to him on dismissal of his case,

this amounts to an abusive manipulation of the Chapter 13 process.

During this period the Debtor repeatedly assured the Court that the linchpin of his case was his dispute with the State and that he could cure the problems with his plan when that dispute was resolved. Here again, however, the Debtor failed to comply with the Court's orders designed to accelerate resolution of that dispute. After repeatedly assuring the Court that he could and would meet with the State to attempt to resolve any payment questions, the Debtor failed to file with the State the joint pretrial statement required by the Court's pretrial order. Only after the December 4 pretrial and under the pressure of an imminent trial date did the Debtor seriously undertake this effort. Having finally done so, both the Debtor and the State now appear to agree that their differences can probably be resolved by a simple audit without the need for a trial.

Although the State's position proved less sound than it asserted and it too failed to comply with the Court's orders, its failures do not excuse or justify the Debtor's behavior. In fairness to the State, its confidence seemed justified by the Debtor's failure to seriously challenge the accuracy of the State's claim. Moreover, the State had for months relied upon a res judicata argument which the Debtor did little to challenge until the eve of the scheduled trial. Despite the Court's order to brief this argument, Debtor's counsel, an experienced bankruptcy lawyer, did not cite section 505 of the Bankruptcy Code which resolves the res judicata issue asserted by the State.

Viewed from the perspective of hindsight it appears that Debtor's failure to respond to the feasibility questions provided by the Chapter 13 Trustee or to come to grips with the State's claim may have been designed to postpone acknowledgement that the Debtor could not prosecute a feasible plan. It may also reflect Debtor's strategy in litigating the State's claim. In any event, the result of Debtor's failure to resolve these matters has resulted in an unjustified and abusive exploitation of the Chapter 13 process.

But Debtor's abuse of the bankruptcy process goes beyond questions of delay or strategy. The Debtor employed the joint stipulation with the State to subvert the Court's authority to control its docket and the proceedings in this case. The stipulation was presented to the Court as fiat not, as provided by law, a procedure that required the Court's approval. It appears that the Debtor expects to use the pending dismissal motion to again avoid a court ordered trial date and to avoid showing that he could fund a feasible plan, while reserving the right to come back into court and deal with these matters on his own timetable.

Debtor's Response does nothing to dispel this appearance. Apart from the unsupported assertion that the Debtor could have funded a plan which paid the State's claim, it offers no explanation for his failure to prosecute his case or to come to grips with the State's claim other than criticism of the Court's procedures. The Response mischaracterizes the extent of judicial time and effort spent on this case and the Court's patience with the Debtor's repeated failures to prosecute his case or comply with Court orders. At its core the Response is an attack, unsupported by authority or analysis, on the Court's exercise of its authority in this case and the Court's control of its docket.

### Analysis

■ In his Response Debtor asserts that the Court may not order dismissal with prejudice in response to the Debtor's motion to dismiss under section 1307(b) of the Bankruptcy Code. But the language and apparent purpose of the applicable Code sections support the contrary conclusion as does the case law. Section 1307(b) provides only that the Court shall dismiss the case. It does not state the implications of that dismissal:

> On request of the debtor at any time, if the case has not been converted under section 706, 1112, or 1208 of this title, the court shall dismiss a case under this chapter. Any waiver of the right to dismiss under this subsection is unenforceable.

Section 349(a) spells out the effect of dismissal:

> Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) [sic should be (g)] of this title.

There is nothing to suggest that the Court should not "order otherwise" in the case of a voluntary dismissal under section 1307(b) of the Code; the Court has found no authority which questions its power to do so.

In *In re Dyke*, 58 B.R. 714 (Bankr.N.D. Ill.1986), the debtor sought to dismiss his chapter 13 case under section 1307(b) because a creditor had threatened to file a motion to lift the stay which would have invoked the refiling prohibition in section 109(g)(2) of the Code. Under that section a debtor who voluntarily dismisses his case after a creditor has filed a motion for relief from the automatic stay is barred from refiling a bankruptcy case for 180 days. The debtor sought to avoid this prohibition by dismissing his case under section 1307(b) of the Code before the creditor filed its motion for relief from stay. The Court held, however, that the debtor's use of section 1307(b) to avoid the 180–day prohibition of section 109(g)(2) violated the spirit and intent of the Code and Congress's attempt to curb abusive bankruptcy filings. Therefore the Court ordered dismissal of the case with prejudice by prohibiting the debtor from filing another case for 180 days. The Court justified this sua sponte action under section 349(a) and section 105 of the Code.

In *Lerch v. Federal Land Bank of St. Louis (In re Lerch)*, 94 B.R. 998 (D.N.D.Ill. 1989), the district court affirmed the bankruptcy court's dismissal of a chapter 12 case with prejudice under section 349(a). In that case the debtor sought dismissal of her case under section 1208(b) of the Code,

which is the counterpart to section 1307(b) in the family farmer chapter of the Code. The bankruptcy court had dismissed the case but retained jurisdiction to permit creditors to file motions seeking dismissal with prejudice under section 349(a). One such motion was filed and the bankruptcy court found that cause existed for dismissal with prejudice and prohibited the debtor from refiling another bankruptcy case for two years.

In *In re Merritt*, 39 B.R. 462 (Bankr.E.D. Pa.1984), the court expressly addressed the question of whether the mandate of section 1307(b) that the court *shall* dismiss the case required immediate dismissal or permitted the court to delay dismissal pending its determination of whether the dismissal should be qualified under section 349. In a thoughtful analysis the court concluded that a voluntary dismissal could appropriately be delayed in order to permit the court to consider how other interests should be protected under section 349(b). *See also, In re Conley*, 105 B.R. 116 (D.S. D.Fla.1989), where the district court reversed the bankruptcy court's one-year refiling prohibition because there was no finding of cause. The Court did not, however, question the appropriateness of dismissal with prejudice where cause existed.

So far as appears no court has held that a voluntary dismissal must be without prejudice. The courts are split, however, as to whether the court must dismiss a chapter 13 case on a section 1307(b) motion in the face of a competing motion to keep the case in the bankruptcy process by converting it to chapter 7 pursuant to section 1307(c). In *In re Gillion*, 36 B.R. 901 (D.E.D.Ark.1983), the district court held that where the debtor chose to dismiss under section 1307(b), the Court lacked power to convert under section 1307(c). *See also In re Sanders*, 100 B.R. 338 (Bankr.S.D.Ohio 1989); *In re Looney*, 90 B.R. 217 (Bankr.W.D.Va.1988). Another bankruptcy court has, however, reached the contrary conclusion in a multi-filing case. *In re Vieweg*, 80 B.R. 838 (Bankr.E. D.Mich.1987). However, the issue of keeping the Debtor in the bankruptcy process against his will is not involved in this case.

Here the Debtor's right to dismiss his case is not at issue. The only question is whether cause exists to deny him the unfettered right to file another case.

If, as Debtor suggests, the Court's dismissal order under section 1307(b) were intended to be automatic and devoid of any judgment by the Court, the draftsmen could have structured voluntary dismissal to be effective without court order as they did in the case of conversion of a chapter 13 case to chapter 7 of the Code. Conversion to chapter 7 under section 1307(a) occurs on the Debtor's filing of the notice to convert. No court order is required. *See* Bankruptcy Rule 1017 and the Advisory Committee Note. As previously noted, section 109(g)(2) imposes a 180–day refiling prohibition on a section 1307(b) dismissal ordered after a motion for relief from stay has been filed. This strongly suggests that similar qualifications under section 349(a) may be appropriate in other circumstances. As a practical matter, insulating voluntary dismissals under section 1307(b) from the constraint of prejudice would provide the possibility for manipulation and abuse apparent in this case with no countervailing benefit to case administration or to sincere debtors.

In order to invoke section 349(a) the Court must find "cause". "Cause" is not defined in the Code. Although the cases which have discussed "cause" are inherently fact specific, they clearly support a finding of cause under section 349(a) where, as here, the debtor without justification has failed for fourteen months to propose a feasible plan, has failed to comply with court orders and has flouted the court's authority. *In re Lerch, supra; see In re McClure*, 69 B.R. 282 (Bankr.N.D.Ind. 1987); *In re Petro*, 18 B.R. 566 (Bankr.E.D. Pa.1982). Cumulatively the Debtor's actions have resulted in an abuse of the bankruptcy process which this Court has both the authority and responsibility to control.

The courts have been particularly sensitive to the possibilities for abuse inherent in chapter 13. In a number of recent cases involving the question of good faith the Sixth Circuit Court of Appeals has pro-

scribed chapter 13 filings where the debtor sought to employ chapter 13 for abusive, unfair or improper purposes. *Memphis Bank & Trust Co. v. Whitman*, 692 F.2d 427 (6th Cir.1982); *In re Okoreeh–Baah*, 836 F.2d 1030 (6th Cir.1988); *In re Doersam*, 849 F.2d 237 (6th Cir.1988); *In re Caldwell*, 851 F.2d 852 (6th Cir.1988); *In re Caldwell*, 895 F.2d 1123 (6th Cir.1990); *Hardin v. Caldwell (In re Caldwell)*, 897 F.2d 529 (6th Cir.1990).

But even if the Debtor's efforts to extend his fourteen month enjoyment of bankruptcy protections free of Court control without evidence of feasibility or good faith were immune from constraint under section 349(a), it appears that the Court has authority under section 105 of the Bankruptcy Code to impose appropriate restraints. Section 105(a) provides:

> The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

This section is intended to provide the Court the power to protect its jurisdiction and authority, *see Johns–Manville Corp. v. Colorado Insurance Guaranty Ass'n. (In re Johns–Manville Corp.)*, 91 B.R. 225 (Bankr.S.D.N.Y.1988), and to prevent abuse of the bankruptcy process. *See In re Dyke, supra.* If, as Debtor urges, he is free to evade and avoid the Court's orders, the Court's authority will have been undermined and diminished.

Based on these considerations the Court has decided to qualify Debtor's dismissal of his case appropriately. Although section 349(a) appears to assume a res judicata effect, *see* 2 L. King, Collier on Bankruptcy ¶ 349.02, at 349–8 (15th ed. 1990), many courts have invoked section 349(a) to enjoin re-filings for some limited period rather than permanently disqualifying any class of debts from discharge. *See In re Dyke,*

*supra*, 180 days; *In re McKissie*, 103 B.R. 189 (Bankr.N.D.Ill.1989), one year; *In re Damien*, 35 B.R. 685 (Bankr.S.D.Fla.1983), one year; *In re Hundley*, 103 B.R. 768 (Bankr.E.D.Va.1989), one year; *In re Lerch, supra*, two years.

In 1984 section 349(a) was modified to include reference to the refiling prohibitions in section 109(f) (renumbered to 109(g) in 1986). In *Lerch* the debtor argued that section 349(a) as revised precluded the bankruptcy court from prohibiting refiling except as provided in section 109(g). The answer to this contention appears to turn on whether the phrase "[u]nless the court, for cause, orders otherwise" at the beginning of section 349(a) modifies only the language preceding the semicolon or whether it also modifies "nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) [sic] of this title," which appears after the semicolon. The *Lerch* court held that the "unless" clause did modify this refiling provision. This interpretation appears correct in view of the scope of section 349(a). Since Congress empowered the bankruptcy court to permanently disqualify debts from discharge where cause is found, it appears reasonable to suppose that it intended to permit the court to temporarily deny discharge where doing so could remedy the "cause" in a less draconian manner responsive to possible changes in the debtor's circumstances.

The fact that the Code expressly provides refiling prohibitions in section 109(g) also lends support to the Court's fashioning similar prohibitions under sections 349(a) or 105(a) where appropriate. Debtor's behavior in this case is similar to that intended to be proscribed in section 109(g)(1) which provides:

> Notwithstanding any other provision of this section, no individual or family farmer may be a debtor under this title who has been a debtor in a case pending under this title at any time in the preceding 180 days if—

(1) the case was dismissed by the court for willful failure of the debtor to abide by orders of the court, or to appear before the court in proper prosecution of the case.

According to Collier this section was addressed to the sort of abuse the Court has found present in this case:

... [S]ection 109(g) prevents certain tactics on the debtor's part that could be deemed abusive. The debtor who does not appear as required or who disobeys the court's orders and suffers dismissal of the case as a result is explicitly prevented from immediately filing another petition; under such circumstances, instant refiling would thwart the court's effort to preserve its authority.

2 L. King, Collier on Bankruptcy ¶ 109.06, at 109–30.1, (15th ed. 1990). *See also, In re Krattiger*, 52 B.R. 383 (D.W.D.Wis. 1985). Based on the abuse found and the fourteen months during which this case has already been pending, the Court has determined that a twelve month prohibition against filing a reorganization case under chapters 11 or 13 of the Code is appropriate subject to being lifted if the Debtor demonstrates the likelihood of a successful reorganization without unreasonable delay.

■ Finally, the Debtor objects to the Court's raising this matter sua sponte but again cites no authority and provides no analysis to explain or support his objection. In *Dyke, supra,* and *In re Landis,* 29 B.R. 235 (Bankr.D.Kan.1983), the courts invoked section 349(a) sua sponte. In *In re Odom Enterprises, Inc., supra,* the court sua sponte dismissed a chapter 11 case following a hearing on its show cause order on the debtor. Insofar as we can discern, there is nothing in the Code which would preclude sua sponte action by the Court. Section 349(a) appears to contemplate sua sponte action. Section 105(a) expressly provides for sua sponte action by the court, even where other parties are expressly charged with raising a matter.

A significant element of this case is the Court's authority to control its docket and to require compliance with its orders. The Debtor's actions in this case have frustrat-ed these objectives. It is hardly surprising, therefore, that Debtor vehemently objects to the Court acting sua sponte. Were this Court not to do so, however, the Debtor not the Court would determine the pace and flow of the case and any attendant litigation.

The Court's order in conformity with this memorandum is filed separately.

### ORDER

Based on the findings and conclusions set forth in the Memorandum of Decision entered by the Court in this case on the date hereof, IT IS ORDERED THAT:

1. This case be, and it hereby is, dismissed with prejudice to the extent provided in paragraph 2 hereof.

2. Gary J. Dilley be, and he hereby is, prohibited from filing any case under chapter 11 or chapter 13 of title 11 of the United States Code (or converting to such chapters any case filed by or against him under chapter 7 of title 11 of the United States Code) within twelve months from the date of the entry of this order without having obtained the prior approval of this Court in an order entered by this Court. Such approval will be granted by the Court only upon a showing by the Debtor that his circumstances have changed so that it appears likely that he can and will prosecute to completion a successful reorganization under either chapter 11 or chapter 13 without unreasonable delay.