**In re Jeanette EARL, Debtor.**

**Bankruptcy No. 91–61570.**

United States Bankruptcy Court,
N.D. Indiana,
Hammond Division at Gary.

Jan. 10, 1992.

**730**

R. Farley, Merrillville, Ind., for debtor.

Douglas Hannoy, Indianapolis, Ind., for Lomas Mortg. USA, Inc.

### MEMORANDUM OPINION AND ORDER[1]

KENT LINDQUIST, Chief Judge.

### I

### Statement of Proceedings

This Chapter 13 case came on for final evidentiary hearing on December 17, 1991, on Motion to Dismiss this case filed by Lomas Mortgage USA, Inc. (hereinafter: "Lomas") on October 4, 1991.

The Motion of Lomas asserts that the Debtor's present Chapter 13 Case No. 91–61570 should be dismissed in that it is the fourth Chapter 13 case filed by her since 1984, and that the present case was filed in bad faith for the sole purposes of delaying a duly scheduled marshal's foreclosure sale, when she did not have sufficient income to cure the prepetition arrears due to Lomas, and she had no reasonable probability that she could propose a viable plan.

### II

### Findings of Fact

No oral testimony was submitted. The parties requested that the Court take judicial notice of the Court's own records in this case, and in the Debtor's previous Chapter 13 cases, and otherwise relied on oral argument. In addition, the Debtor orally stipulated in open court that the dates and times of the filing of the real estate foreclosure action, the entry of a foreclosure decree, and the scheduling of two foreclosure sales as set out in Lomas' Motion were true and accurate.

■ The Court takes judicial notice of the records in all four of the Debtor's Chapter 13 cases.[2] In addition, the Chapter 13 Trustee on December 17, 1991, filed his affidavit and status report as to the Trustee's records as to payments made by Debtor to Trustee on case Number 91–

---

1. This Order constitutes the Court's Findings of Fact and Conclusions of Law pursuant to Fed. R.Civ.P. 52 as made applicable by Bankruptcy Rule 7052.

2. Bankruptcy Rule 9017 provides that the Federal Rule of Evidence apply in cases under the Code. *See also,* Fed.R.Evid. 1101.

 Federal Rule of Evidence 201 provides that the Court, whether or not requested, may take Judicial Notice of adjudicative facts at any stage of the proceedings.

 Federal Rule of Evidence is the only evidentiary rule on the subject of judicial notice.

 This Court has held in *In re Snider Farms, Inc.,* 83 B.R. 977, 986 (Bankr.N.D.Ind.1988), cit-

ing, *In re Woodmar Realty,* 294 F.2d 785, 788 (7th Cir.1961), *cert. den.* 369 U.S. 803, 82 S.Ct. 643, 7 L.Ed.2d 550 (1962), that a bankruptcy court is duty bound to take judicial notice of its records and files. *See also, State of Florida Board of Trustees of Internal Improvement Trust Fund v. Charley Toppino & Sons, Inc.,* 514 F.2d 700, 704 (5th Cir.1975) (not error for bankruptcy court to take judicial notice of related proceeding and records in cases before a court).

 The Court is aware that there is a very crucial distinction between taking judicial notice of the fact that an entity has filed a document in the case, or in a related case, on a given date, i.e., the *existence* thereof, and the taking of judicial notice of the truth or falsity *contents* of any

61570, 90–62320, and 86–61483. The records for Case No. 84–60509 are not available.

Based on the foregoing, in conjunction with the Debtors' oral stipulation as to the truth and accuracy of the allegations made in Lomas' Motion as to when it filed its foreclosure action and scheduled foreclosure sales, the Court makes the following findings of fact:

1. That on April 19, 1984, the Debtor filed her initial petition pursuant to Chapter 13 of the Bankruptcy Code as Case No. 84–60509. The Debtor scheduled $540.90 in unsecured debt and $12,755.00 in secured debt, of which $10,255.00 was scheduled as owing to the United States Dept. of Housing and Urban Development on a real estate mortgagee (the actual mortgagee was the Movant); that on July 23, 1984, Lomas filed its proof of claim for $14,709.77 in principal, plus $7,084.92 in accrued interest. Attached as an exhibit to the claim was the note and mortgage executed by the Debtor on November 6, 1970 in the principal sum of $16,000.00, payable at the rate of $123.04 a month. An arrearage claim was also filed by Lomas on that same date for $12,783.14 of which $9,299.13 represented 69 monthly payments at $134.77 covering the period from November 1, 1978, through July 7, 1984, together with $2,134.97 for advances made on real estate taxes, plus various miscellaneous charges.

2. That on September 17, 1984, Lomas filed its Motion for Relief from Stay based upon the Debtor's failure to make any post-petition payments since the payment due for August 1, 1984; Lomas' Certification in support of the Motion for Stay Relief filed on September 17, 1984, showed a principal balance due of $14,709.77, together with accrued interest from November, 1978 to September 1, 1984 of $7,511.73; that

this Court sustained Lomas' Motion for Relief from Stay by order entered on September 16, 1985; and, that Lomas proceeded with its foreclosure action. The Court dismissed this case on November 18, 1985 on the Motion to Dismiss by the Chapter 13 Trustee, filed on July 11, 1985, reflecting that the Debtor had materially defaulted in her plan payments. The Trustee's final report and account filed on December 20, 1985 reveals that the Debtor paid Lomas a total of $874.78 through the Trustee.

3. That on August 19, 1986, the Debtor filed a second petition pursuant to Chapter 13 of the Bankruptcy Code as Case No. 86–61483; that the Debtor's plan—scheduled a prepetition arrearage to Lomas in the sum of $8,370.00 with the arrearage to be paid from the proceeds of the sale of the subject real estate, or an unidentified pending lawsuit; that on April 24, 1987, Lomas filed an arrearage claim of $20,174.79, and an additional claim showing a total debt due of $25,337.15, which included $10,627.18 in accrued interest; that on April 24, 1987, July 12, 1988, July 29, 1988, and February 7, 1989, Lomas filed its Motions for Relief from Stay based upon the Debtor's failure to make the required post-petition plan payments. By order of March 13, 1989, the Debtor was given 60 days to cure any default in plan payments, and failing to do so the stay could be vacated without further notice and hearing upon filing of an affidavit of default. On January 4, 1989, the Trustee filed his Motion to Dismiss for failure to make plan payments. The case was dismissed on the Trustee's Motion on July 25, 1989. The Trustee's final report and account filed August 22, 1989 reflected the Debtor had paid Lomas a total of $1,592.40 through the Trustee.

such document for the purposes of making a finding of fact.

However, the verified Schedules and Statements filed by a debtors are not just pleadings, motions or exhibits thereto. They are evidentia-

ry admissions. *In re Cobb,* 56 B.R. 440, 442 n. 3 (Bankr.N.D.Ill.1985). *See,* Fed.R.Evid. 801(d)(2) (Admission by a party opponent not hearsay).

4. That Lomas obtained a judgment and foreclosure decree against the Debtor on August 30, 1990, and a Marshal's Sale of the real estate located at 715 Hayes Street, Gary, Indiana, was scheduled for December 11, 1990.

5. That Debtor filed her third Chapter 13 Bankruptcy Petition on December 10, 1990, or one day prior to the scheduled Marshal's Sale, under Case No. 90–62320, thus staying a Marshal's Sale scheduled for December 11, 1990.

6. That on February 14, 1991, Lomas filed its Motion to Dismiss Chapter 13 Bankruptcy under Case No. 90–62320 for the failure of the Debtor to file a Chapter 13 plan; that on April 25, 1991, this Court entered its Order granting Lomas' Motion to Dismiss the Debtor's Third Chapter 13 Bankruptcy; that the Trustee's final report and account filed on April 30, 1991 stated that no payments whatsoever had been made by the Debtor to the Trustee; and, that a second Marshal's Sale was scheduled for August 13, 1991.

7. That the Debtor filed her fourth Chapter 13 Bankruptcy Petition on August 13, 1991, on the day of the second scheduled Marshal's Sale under Case No. 91–61570, i.e. the case presently before the court, thus staying a second Marshal's Sale scheduled for August 13, 1991.

8. That the Debtor's plan filed September 23, 1991, provided for 60 monthly payments to Lomas at $406.23 a month. No express provision was made in the plan to cure prepetition arrears. The Debtor's plan apparently attempts to bifurcate Lomas' claim pursuant to § 506, value its allowed secured claim at $19,800.00, and treat all prepetition arrears as unsecured, so that it need not be cured over the life of the plan. The Debtor's Schedule I shows that Debtor as "retired" with a gross monthly income of $1,091.00 from Social Security with $641.00 in total monthly expenses.

9. That on December 5, 1991, Lomas filed its Proof of Secured Claim asserting that its total secured claim was now $51,169.01, plus 8.5% interest from December 1, 1991. This claim included, among other things, $14,709.77 in unpaid principle, $16,462.02 in accrued interest from December 1, 1979 to December 1, 1991, and $11,494.73 in escrow advances. A prepetition arrearage claim of $39,296.77 was asserted which included attorney's fees and foreclosure costs. The claim further asserts that the last payment the Debtor made was for the payment due December 1, 1979, and that post-petition arrearages in this case were $793.00 at that time.

10. That the Trustee's affidavit filed on December 17, 1991, avers that the Debtor had made no plan payments whatsoever to the Trustee in Case No. 91–61570.

### III

*Conclusions of Law and Discussion*

The Court has subject matter jurisdiction over this contested matter, and the same is a core proceeding. 28 U.S.C. § 157(b)(2).

Section 1307(c) governs the dismissal of a chapter 13 case on the Motion of a creditor, the trustee, or the U.S. Trustee.[3]

---

**3.** 11 U.S.C. § 1307(c) provides as follows:

(c) Except as provided in subsection (e) of this section, on request of a party in interest or the United States trustee and after notice and a hearing, the court may convert a case under this chapter to a case under chapter 7 of this title, or may dismiss a case under this chapter, whichever is in the best interest of creditors and the estate, *for cause, including—*

(1) unreasonable delay by the debtor that is prejudicial to creditors;

(2) nonpayment of any fees and charges required under chapter 123 of title 28;

(3) failure to file a plan timely under section 1321 of this title;

(4) failure to commence making timely payments under section 1326 of this title;

(5) denial of confirmation of a plan under section 1325 of this title and denial of a request made for additional time for filing another plan or a modification of a plan;

(6) material default by the debtor with respect to a term of a confirmed plan;

(7) revocation of the order of confirmation under section 1330 of this title, and denial of

■ The specific grounds for dismissal set out in § 1307(c), are not all-inclusive, or exhaustive. 5 *Collier on Bankruptcy*, ¶ 1307.01[4], P. 1307–10 (L. King 15th ed.). *See*, § 102(3), as to the construction of the word "including" as found in § 1307(c)(3). That word is not limiting.

It is further observed that § 1325(a)(3) also expressly requires that the Chapter 13 *plan*, as opposed to the *petition* commencing the case, must be proposed in good faith.

"[T]he term, 'good faith' is not defined in the Code, or in its legislative history, and courts have said no precise definition is possible." *Matter of Smith*, 848 F.2d 813, 817 (7th Cir.1988), *quoting, In re Hawes*, 73 B.R. 584, 587 (Bankr.E.D.Wis.1987). The lack of good faith in filing a petition commencing a case has been judicially construed as constituting grounds for dismissal under § 1307(c)(3). *See, e.g., In re Robinson*, 18 B.R. 891, 893 (Bankr.D.Conn. 1982) (authority to dismiss for lack of good faith exists, but should be limited to extraordinary circumstances); *In re March*, 83 B.R. 270, 275–76 (Bankr.E.D.Pa.1988). (There is a requirement that a bankruptcy be filed in good faith which is separate and apart from the requirement that a chapter 13 plan be proposed in good faith. In evaluating the Debtor's good faith in filing the Court's only inquiry is whether the Debtor seeks to abuse the Bankruptcy Law by employing it for a purpose for which it was not intended).

The good faith doctrine is applicable in both Chapter 11 and Chapter 13 cases. However, the doctrine has been applied differently in Chapter 13 cases as opposed to Chapter 11 cases. *See, In re Schaitz*, 913 F.2d 452, 453 (7th Cir.1990) (Despite similar statutory language, issue of good faith differs in Chapter 13 and Chapter 11. Good faith under Chapter 13 depends on the "totality of the circumstances".).

■ Chapter 13 plans, as opposed to Chapter 11 plans, must be promptly filed. *See*, Fed.R.Bk.P. 3015. Thus, as opposed to Chapter 11, the issue of whether a Chapter 13 case should be dismissed for lack of "good faith" often involves not only a consideration of the circumstances surrounding the filing of the *petition*, but also the contents of the debtor's *plan*. *See, In re Smith*, 848 F.2d 813, 816, n. 3 (7th Cir.1988) (The Court discusses the "overlapping" good faith inquiries when both the filing of the petition and the confirmability of the debtor's Chapter 13 plan are in issue. The Court also observed that under § 1307 a petition is to be rejected for the same reasons that a plan would not be confirmed, including lack of good faith). *See also, In re Belt*, 97 B.R. 962, 964 (Bankr.N.D.Ind. 1989) (Motion to dismiss chapter 13 case for "bad faith" will be measured against the same standards for determining "good faith" at confirmation under § 1325(a)(3)).

■ The initial inquiry is whether "[u]nder the circumstances of the case there has been an abuse of provisions, purpose, or spirit of [The Chapter] in the proposal ..." *In re Rimgale*, 669 F.2d 426, 431 (7th Cir. 1982), *quoting, In re Terry*, 630 F.2d 634–35 (8th Cir.1980).

The Court in *Rimgale* also stated that "The good faith requirement is one of the central, perhaps the most important confirmation finding to be made by the Court in any Chapter 13 case." *Id.* 669 F.2d at 431 & n. 14, *quoting, In re Kull*, 12 B.R. 654, 658 (D.Ga.1981), *aff'd. sub nom., Kitchens v. Georgia Railroad Bank and Trust Co., In re Kitchens*, 702 F.2d 885 (11th Cir. 1983); *In re Smith*, 848 F.2d at 817, *supra.*

■ It is important to note however, that good faith under § 1307(c) is not necessar-

confirmation of a modified plan under section 1329 of this title;

(8) termination of a confirmed plan by reason of the occurrence of a condition specified in the plan other than completion of payments under the plan;

(9) only on request of the United States trustee, failure of the debtor to file, within fifteen days, or such additional time as the court may allow, after the filing of the petition commencing such case, the information required by paragraph (1) of section 521; or

(10) only on request of the United States trustee, failure to timely file the information required by paragraph (2) of section 521. (emphasis supplied).

**734**

ily identical to the good faith requirement under § 1325(a)(3). Section 1307(c) refers to good faith in the filing of the *petition*. Section 1325(a)(3) refers to good faith in the proposed *plan*. Not surprisingly, if a petition is filed in bad faith, it is generally been held that the plan may not be proposed in good faith. Because, the good faith requirement of § 1325(a)(3), and the good faith contemplated in § 1307, are not necessarily identical, hypothetically it is possible that a case may be filed in good faith, but a plan proposed in bad faith. As pointed out by the Seventh Circuit in the case of *In the Matter of Madison Hotel Associates*, 749 F.2d 410, 425–26 (7th Cir. 1984), in the context of both a Chapter 11 proceeding and a Chapter 13 proceeding, the Court must distinguish between the good faith that is required to *confirm* a plan under § 1129(a)(3) and § 1325(a)(3) and the "good faith" that is required as a prerequisite to *filing* a petition at the threshold of the case. *See also, Matter of Smith*, 848 F.2d 813, 816, n. 3, *supra* (debtor's "prepetition" and "pre-plan" conduct could theoretically satisfy some good faith test as to whether petition filed in good faith or plan proposed in good faith).

As noted by the court in *In re Yukon Enterprises, Inc.*, 39 B.R. 919 (Bankr.C.D.Calif.1984), a chapter 11 case involving whether the automatic stay should be vacated pursuant to § 362(d)(1) for "cause" in that the case was filed in bad faith, several courts have adopted the reasoning of the Seventh Circuit in *In re Loeb Apartments, Inc.*, 89 F.2d 461 (7th Cir.1937) regarding the good faith requirement for a petition filed under the former Bankruptcy Act as an appropriate guide to determine whether the debtor has filed a bankruptcy petition in good faith. The *Yukon* court quoted the *Loeb* court which stated:

"Whether it [good faith] exists in any case depends upon the facts and circumstances presented. No one evidentiary fact can be given paramount weight in deciding the question. If it is obvious that a debtor is attempting unreasonably to deter and harass creditors in their bona fide efforts to realize upon their securities, good faith does not exist. But if it is apparent that the purpose is not to delay or defeat creditors but rather to put an end to long delays, administration expenses ... to mortgage foreclosures, and to invoke the operation of the [bankruptcy law] in the spirit indicated by Congress in the legislation, namely, to attempt to effect a speedy efficient reorganization, upon a feasible basis ... good faith cannot be denied." *In re Loeb Apartments, Inc.*, 89 F.2d 461, 463 (7th Cir.1937); *In re Levinsky*, 23 B.R. 210, 218 (Bankr.E.D.N.Y.1982); *In re Thirtieth Place, Inc.*, 30 B.R. 503 (Bankr.App.Ariz. 9th Cir.1983).

*Id.* 39 B.R. at p. 921.

Almost all circuits have sanctioned the dismissal of a case for lack of good faith, although the cases often do not distinguish between § 1307(c)(3) and § 1325(a)(3). *See, In re Makarchuk*, 76 B.R. 919, 922 (Bankr. N.D.N.Y.1987). (Citing nine circuit court opinions).

█ Because Chapter 13 plans are not generally subject to acceptance by creditors pursuant § 1325, and Chapter 13 debtors are not subject to denial of discharge as are Chapter 7 debtors under § 727, the Bankruptcy Court has an independent duty to insure the case is prosecuted in good faith. *In re Rimgale*, 669 F.2d 426, 431, *supra*. The "good faith" requirement has long been a policy mechanism of the bankruptcy courts to assure that those who invoke the reorganization provisions of the Bankruptcy Code do so only to accomplish the aims and objectives of bankruptcy philosophy and policy, and for no other purposes. *See, In re Chase*, 43 B.R. 739, 745 (D.Md.1984).

Nearly all decisions that involve the issue of good faith in a case filed under Chapter 13 set out a "totality of circumstances" standard. *See, In re LaMaire*, 898 F.2d 1346, 1353–54 (8th Cir.1990), wherein the dissenting opinion cites nine Court of Appeals' decisions employing this standard.

The Seventh Circuit has rendered three opinions under the Code on the issue of whether a Chapter 13 *plan* has been pro-

posed in good faith as opposed to whether a Chapter 13 *petition* has been filed in good faith. *See, In re Rimgale,* 669 F.2d 426, *supra,* (Rendered prior to the Bankruptcy Amendments and Federal Judgeship Act of 1984, "BAFJA"); *Matter of Smith,* 848 F.2d 813, *supra;* and, *In re Schaitz,* 913 F.2d 452, *supra.* The Seventh Circuit has stated that the principal question under the "totality of circumstances" standard is "whether the debtor has dealt fairly with his creditors." *Id.* 913 F.2d at 453.

A typical list of factors for the Court to consider are set out in *In re Estus,* 695 F.2d 311, 317 (8th Cir.1982) which is cited by the Seventh Circuit in *Matter of Smith,* 848 F.2d 813, 818, n. 4, *supra.* These are:

(1) the amount of the proposed payments and the amount of the debtor's surplus;

(2) the debtor's employment history, ability to earn and likelihood of future increases in income;

(3) the probable or expected duration of the plan;

(4) the accuracy of the plan's statements of the debts, expenses and percentage repayment of unsecured debt and whether any inaccuracies are an attempt to mislead the court;

(5) the extent of preferential treatment between classes of creditors;

(6) the extent to which secured claims are modified;

(7) the type of debt sought to be discharged and whether any such debt is nondischargeable in Chapter 7;

(8) the existence of special circumstances such as inordinate medical expenses;

(9) *the frequency with which the debtor has sought relief under the Bankruptcy Reform Act;*

(10) *the motivation and sincerity of the debtor in seeking Chapter 13 relief;* and

(11) the burden which the plan's administration would place upon the trustee. (Emphasis supplied).

█ However, the relevant factors to be considered vary from case to case. *See, In re Jones,* 119 B.R. 996, 1002–03 (Bankr. N.D.Ind.1990), wherein the Court discusses the various factors the Seventh Circuit, and other Courts have identified. "No list,

however exhaustive, can be complete. The variety of factors which might be worthy of consideration is potentially infinite." *Id.* 119 B.R. at 1003. *See also, In re Easley,* 72 B.R. 948, 950 (Bankr.M.D.Tenn.1987), where the Court stated:

The Bankruptcy Code does not define 'good faith.' There is no illuminating legislative history. More than 300 reported 'good faith' decisions form a maze of rules and exceptions swallowing rules. Nearly identical fact patterns have produced inconsistent results within judicial districts and across the circuits. The reported decisions demonstrate that 'good faith' is an illusive statutory description of the limits of Chapter 13 relief.

Among the factors the Court may consider is the Debtor's prior history under the Bankruptcy Code. *In re Doersam,* 849 F.2d 237, 239 (6th Cir.1988), *citing, In re Estus,* 695 F.2d at 317, *supra.*

The United States Supreme Court in the case of *Johnson v. Home State Bank,* —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991), addressed the issue of serial filings in the context of a Chapter 13 filed after a prior Chapter 7 discharge had been obtained, as opposed as to the case at bar which involves successive Chapter 13 petitions. The Court stated:

Serial filings under Chapter 7 and Chapter 13, respondent maintains, evade the limits that Congress intended to place on these remedies.

We disagree. Congress has expressly prohibited various forms of serial filings. *See, e.g.,* 11 U.S.C. § 109(g) (no filings within 180 days of dismissal); § 727(a)(8) (no Chapter 7 filing within six years of a Chapter 7 or Chapter 11 filing); § 727(a)(9) (limitation on Chapter 7 filing within six years of Chapter 12 or Chapter 13 filing). The absence of a like prohibition on serial filings of Chapter 7 and Chapter 13 petitions, combined with the evident care with which Congress fashioned these express prohibitions, convinces us that Congress did not intend categorically to foreclose the benefit of Chapter 13 reorganization to a debtor who

previously has filed for Chapter 7 relief. *Cf. United States v. Smith,* 499 U.S. ——, ——, 111 S.Ct. 1180, ——, 113 L.Ed.2d 134 (1991) (expressly enumerated exceptions presumed to be exclusive).

The Bank's contention also fails to apprehend the significance of the full range of Code provision s designed to protect Chapter 13 creditors. A bankruptcy court is authorized to confirm a plan only if the court finds, *inter alia,* that "the plan has been proposed in good faith," § 1325(a)(3);

\* \* \* \* \* \*

In addition, the bankruptcy court retains its broad equitable power to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Code.]" § 105(a). Any or all of these provisions may be implicated when a debtor files serially under Chapter 7 and Chapter 13. *Id.* 111 S.Ct. at 2166.

As noted by the Seventh Circuit in *In re Smith,* 848 F.2d at 820, *supra,* § 109(g), "Reduces in importance the need to evaluate repetitive filings as indicative of lack of good faith."

■ There are no express statutory prohibitions against the filing of successive or serial Chapter 13 petitions. In addition, it is clear from the case law that the filing of successive or serial Chapter 13 petitions does not constitute lack of good faith *per se,* it may be evidence of the lack of good faith. *In re Metz,* 820 F.2d 1495, 1497 (9th Cir.1987) (While successive filings are not necessarily in bad faith *per se,* "successive filings may be examined together and the result achieved by such filings reviewed against the statutory requirements."). *See also, In re Nash,* 765 F.2d 1410, 1414–15 (9th Cir.1985) (absent further Congressional action Debtor may file successive chapter 13 plans as long as each new plan is proposed in good faith); *Neufeld v. Freeman,* 794 F.2d 149, 153 (4th Cir.1986) (successive filings can be evidence of bad faith); *In re McKissie,* 103 B.R. 189, 191 (Bankr.N.D.Ill.1989) (the filing of a second case or serial case is not *per se* bad faith). (Collecting cases).

However, a problem different from that posed by "Chapter 20" cases occurs (i.e. a chapter 7 case wherein a discharge is granted followed directly by a chapter 13 case), when a debtor files successive Chapter 13 cases, the first dismissed, without successfully completing the plan, before the second is filed. This practice can result in a groundless reimposition of the automatic stay and circumvention of the appeal process. *In re McKissie,* 103 B.R. at 192, *supra.* Several courts have found serial Chapter 13 filings to be in good faith if the debtors' circumstances changed in such a way as to eliminate the reasons for the dismissal of the first case. *See e.g., In re Chisum,* 847 F.2d 597, 600 (9th Cir.1988), *cert. denied, sub nom, Mortgage Mart, Inc. v. Rechnitzer,* 488 U.S. 892, 109 S.Ct. 228, 102 L.Ed.2d 218 (1988) (multiple filings permissible because of changed circumstances).

Innumerable cases have had to deal with the issue of whether successive, or serial filings constitute an abuse of the Bankruptcy Laws, and should be dismissed for lack of good faith. *See, e.g., Shearson, Lehman Hutton Mortgage Corp. v. Hundley, (In re Hundley* ), 103 B.R. 768, 771 (Bankr. E.D.Va.1989) (dismisses debtor's seventh bankruptcy case and enjoins debtor from filing another petition within a year); *In re Hundley,* 99 B.R. 306, 309 (Bankr.E.D.Va. 1989) (dismisses seventh bankruptcy case in five years filed on eve of foreclosure, no unsecured debt and purpose of filing was to manage a home mortgage not reaffirmed in prior Chapter 7 case); *In re Wainwright,* 85 B.R. 456, 458 (Bankr. N.D.Ohio 1988) (abuse justifying denial of confirmation, dismissal "with prejudice" and imposition of sanctions where property was transferred by a quit claim deed to debtor's on the eve of a foreclosure sale, and the debtor immediately filed a Chapter 13 case to preclude foreclosure sale); *In re Walker,* 102 B.R. 612, 614–16 (Bankr. N.D.Ohio 1989) (debtor enjoined to file any case for a period of one year and sanctioned with payment of $2,000 to mortgage holder where debtor filed three bankruptcy petitions in four years, made no payments

to the trustee or to the mortgage holder and the debtor testified she did not intend to fund plan at all, but only to buy time to refinance her mortgage.); *In re Clark*, 86 B.R. 593, 594–95 (Bankr.E.D.Ark.1988) (case dismissed based on history of multiple bankruptcy filings on the eve of foreclosure sales, only one secured creditor, failure to file schedules and statements of affairs, and lack of regular income.); *In re Jackson*, 91 B.R. 473, 474–75 (Bankr. N.D.Ill.1988) (court dismissed fourth case filed by debtor or her husband where the purpose of the serial filings between 1982 and 1988 was to cure mortgage arrearages that the debtor apparently could not cure over the life of a single Chapter 13 plan); *In re McElveen*, 78 B.R. 1005, 1007 (Bankr. D.S.C.1987) (fourth petition dismissed for bad faith where debtor failed to demonstrate change in circumstances and failed to show good cause why prior plan was not modified prior to dismissal. Rule 9011 sanctions imposed). *In re White*, 72 B.R. 169, 170 (Bankr.D.S.C.1986) (fourth Chapter 13 case is dismissed where debtors failed to demonstrate any change in circumstance); *In re Moore*, 50 B.R. 301, 302–03 (Bankr.S.D.Ohio 1985) ("abusive filing, not in the spirit or purpose of the bankruptcy laws as codified in the concept of good faith" where debtor's third bankruptcy within three years is a Chapter 13 case intended to cure default in home mortgage reaffirmed in prior Chapter 7 case); *In re Bolton*, 43 B.R. 598, 602–03 (Bankr. E.D.N.Y.1984) (debtor and debtor's counsel "acted in concert ... in abusing the bankruptcy process" where the debtor filed three Chapter 13 cases to defeat foreclosure, and all were either dismissed or withdrawn. Counsel ordered to refund attorney's fees); *In re Perez*, 43 B.R. 530, 534 (Bankr.S.D.Tex.1984) (abuse of judicial process entitling creditor to costs and attorney's fees where counsel filed three Chapter 13 cases to prevent foreclosure, debtor did not have regular income, there was no change in circumstances, and no purpose was shown for second and third filings other than seeking to avoid termination of the automatic stay in the first case); *In re Kinney*, 51 B.R. 840, 843–48 (Bankr. C.D.Cal.1985) (chronicle of 10 case filings including multiple Chapter 13 cases by related family members. Sanctions imposed on Debtor's counsel.); *Snow v. Jones*, 41 B.R. 263, 266–68 (Bankr.C.D.Cal.1984) (sanctions against debtor and counsel where debtor filed six petitions, including four Chapter 13s in an effort to defeat foreclosure.); *In re Gary*, 38 B.R. 675, 676–77 (Bankr.D.Md.1984) (case filed "clearly to gain leverage to force a secured creditor to execute a forbearance agreement" was abusive. Sanctions ordered under Bankr.R. 9011 and under 28 U.S.C. § 1927.); *In re Hill*, 34 B.R. 21, 22 (Bankr. M.D.Fla.1983) ("abusive filing" where debtor files a second Chapter 13 petition solely for the purpose of frustrating the right of [a] secured creditor to enforce [its] mortgage. Case Dismissed with prejudice.); *In re Eck*, 34 B.R. 11 (Bankr.M.D.Fla.1983) (Sanctions imposed on debtor's attorney who dismissed chapter 13 on date set for hearing on motion for stay relief and thereafter filed second chapter 13 petition); *Carson v. First Fed.Sav. & Loan Ass'n.*, 32 B.R. 733, 735 (W.D.Pa.1983) (abuse where debtor converted to Chapter 13 then neither prepared a plan nor adhered to interim payment proposal. Sole purpose of conversion was to delay a mortgage foreclosure until a divorce settlement could be reached.). *Compare: Society Nat'l Bank v. Barrett (In re Barrett)*, 105 B.R. 385, 390–92 (Bankr.N.D.Ohio 1989) (debtor's bankruptcy case was filed in good faith notwithstanding misconduct in prior bankruptcy cases and manipulation of the bankruptcy court and a state court to accomplish the stay of foreclosure on five separate occasions. Debtor's prior conduct was in bad faith, but changed circumstances, including a dramatic increase in income, justified the most recent Chapter 13 filing. Debtor sanctioned with payment of $695 as the wages of prior sins.).

■ In reviewing, the opinions of the Seventh Circuit in *Rimgale*, 669 F.2d 426; *Smith*, 848 F.2d 813; and *Schaitz*, 913 F.2d 452, *supra*, for guiding principles in the application of the good faith doctrine in the context of a motion to dismiss a chapter 13

petition based on successive or serial filings, the Court observes that the Seventh Circuit has held as follows:

1. In eliminating the requirement that a majority of creditors approve a plan, Congress did not also eliminate scrutiny of plans. Instead Congress transferred the decision to the Bankruptcy Judge, and aided by the Trustee, it is the Court's duty to evaluate the good faith of a plan. *Rimgale*, 669 F.2d at 431.

2. The Bankruptcy Code does not define good faith. "A comprehensive definition of good faith is not practical. Broadly speaking, the basic inquiry is whether or not under the circumstances of the case, there has been an abuse of the provisions, purpose or spirit of the chapter in the proposal." *Rimgale*, 669 F.2d at 431, *quoting, In re Terry*, 630 F.2d 634, 635 (8th Cir. 1980). The conduct comprehended under "good faith" will have to be defined on a case-by-case basis. *Rimgale*, 669 F.2d [at] 431.

3. The broad set of factors to be considered by the Court ultimately merge into a generic "totality of circumstances" test, wherein the court must " 'examine whether or not under the circumstances of the case there has been abuse of the provisions, purpose and spirit of [the chapter] in the proposal.' " *Smith*, 848 F.2d at 818, *quoting, Rimgale*, 669 F.2d at 431 (*quoting, In re Terry*, 630 F.2d 634, 635 (8th Cir.1980) (*quoting, 9 Collier on Bankruptcy*, ¶ 9.20 at 319 (14th ed. 1978)).

■ In the context of serial or successive filings, the Court concludes that a bona fide change in circumstances may justify that a successive filing was proper. *In re Metz*, 820 F.2d at 1498, *supra; In re Johnson*, 708 F.2d 865, 868 (2nd Cir.1983) (Court should determine if bona fide change in circumstances justified both default in first plan and second filing); *In re Chisum*, 847 F.2d 597, *supra,* (bona fide change in circumstances justified the debtor's multiple filings); *In re McKissie*, 103 B.R. at 192, *supra*) (lack of change of

circumstances lead court to conclude filing was in bad faith).

■ In applying the foregoing standards to the case at bar, the Court observes that the first two chapter 13 cases were dismissed for failure to make plan payments. The third chapter 13 case was dismissed because the Debtor filed no plan of reorganization whatsoever.

The Debtor paid Lomas a total of only $874.78 through the Trustee in the first case, and a total of $1,592.40 in the second case. No payments were made by the Trustee in the third case, and no payments whatsoever have been made to the Trustee in the present case. Thus, over a period of seven years and eight months since the first case was filed, the Debtor has only made a total of $2,467.18 in payments to Lomas through the Trustee. The Debtor has thus essentially resided in the subject realty during this period of time "rent free", while Lomas has been compelled to make additional escrow advances totaling at least $11,474.73 for real estate taxes (and possibly insurance—the record is not clear on this point) to protect its security interest in the realty.

The net effect is that as of the present time, the Debtor has only paid her original mortgage obligation incurred on November 6, 1970 to Lomas, through December 1, 1979. When the original petition was filed in 1984, Lomas' claim showed an arrearage of 69 monthly installments, and a total arrearage of $12,784.15. Lomas' prepetition arrearage claim in the present case consists of $31,720.00 for her past-due mortgage payments covering the period from January 1, 1980 through August 1, 1991, together with attorney's fees and foreclosure costs (if allowable under § 506(b)), and delinquency charges.

The Debtor is on a fixed income of $1,091.00 a month, and apparently has been so in each case. Her present plan proposes to pay Lomas $406.23 a month. Based on this monthly plan payment there is no way that the Debtor can make her regularly monthly mortgage payment, and effect a cure of her prepetition arrears over the life

of the plan, even if she were permitted to do so over 60 months.

The Debtor has shown no bona fide change in circumstances since the dismissal of the three prior chapter 13 cases which would indicate she could successfully fund the plan as proposed in the present case. The mortgage arrears have continued to mount, and her income has remained the same.

It is clear to the Court that the Debtor has no bona fide intent to reorganize and pay Lomas' allowed secured claim through a confirmed chapter 13 plan, and that each case was filed merely to thwart Lomas' efforts to realize on its collateral. In particular, this case and the third case was filed on the very eve of scheduled foreclosure sales. Even if *arguendo* the Debtor had such a bona fide subjective intent, the Debtor, in view of her limited disposable income, had no objective and realistic chance whatsoever to fund a plan that would successfully cure the very substantial prepetition arrears that had accumulated, and also maintain her regular monthly mortgage payments to Lomas. Thus, said petitions were filed with no reasonable prospects of consummating a feasible plan. All of the petitions can only be construed as being filed to delay Lomas' rights to foreclosure on its collateral and not to reorganize.

As stated by the Court in *In re Jackson,* 91 B.R. 473, *supra:*

> Good faith is not synonymous with honesty and bad faith is not synonymous with dishonesty. But if the good faith requirement of Section 1322 means anything, it means that the proposed plan cannot be a device to avoid the limitations imposed by the Bankruptcy Code itself. The good faith requirement "is meant to bar the confirmation of a chapter 13 plan ... where the proposed plan, if consummated, would contravene the spirit of Chapter 13." H.R.Rep. No. 1195, 96th Cong., 2d Sess. 24 (1980). Although the plan proposed here, looked at in isolation, appears to comply with the spirit and purposes of Chapter 13, when viewed in combination with the prior filings, the effect would be the circumvent of statutory limitations on the powers of Chapter 13 debtors to compromise the rights of secured creditors.

*Id.* 91 B.R. at 475.

"Filing a bankruptcy petition to prevent foreclosure if undertaken pursuant to a legitimate effort at reorganization is not reprehensible if undertaken pursuant to a legitimate effort at reorganization and is in accord with the aim of the Bankruptcy Code." *In re Chisum,* 847 F.2d at 598–99, *supra.*

■ However, it is clear that when a bankruptcy case has been filed only for the purpose of inhibiting or forestalling a foreclosure action on the debtor's assets without the intention of financial rehabilitation, the case should be dismissed as having been filed in bad faith. *See, In re McKissie,* 103 B.R. at 192, *supra, citing, In re Wentworth,* 83 B.R. 705, 706–09 (Bankr. D.N.D.1988) (chapter 11 case); *In re Doss,* 133 B.R. 108, 109 (Bankr.N.D.Ohio 1991); *Matter of Oakbrook Village, Inc.,* 108 B.R. 838, 844–47 (Bankr.S.D.Ga.1989) (stay vacated in Chapter 11 case); *In re Clark,* 86 B.R. 593, 594–95 (Bankr.S.D.Iowa 1988); *In re Galloway Farms, Inc.,* 82 B.R. 486, 488–90 (Bankr.S.D.Iowa 1987).

In the case at bar, the Court will take into consideration the record not only in this case, but the record in the three previous bankruptcy cases in applying the "totality of circumstances test" to determine whether the Debtor's petition was filed in good faith.

This is the fourth chapter 13 case filed by the Debtor over a period ranging from April 19, 1984 to August 13, 1991.

Lomas obtained a decree of foreclosure on August 30, 1990, after the dismissal of the second case. The first sheriff's sale scheduled for December 11, 1990 was stayed by her third chapter 13 case filed on December 10, 1990. This case was dismissed on April 25, 1991. The second sheriff's sale scheduled for August 13, 1991, was again stayed by the filing of the chapter 13 case presently before the Court on August 13, 1991.

Accordingly, this case will be dismissed, for cause, pursuant to 11 U.S.C. § 1307(c), as not being filed in good faith in that it was filed merely to frustrate Lomas' rights to foreclosure on its security.

The final issue is whether the Court should merely dismiss this case without prejudice pursuant to 11 U.S.C. § 349(a), or fashion a special remedy *sua sponte.* Unless the Court otherwise orders, a dismissal is without prejudice to refiling, except as provided in 11 U.S.C. § 109(a). However, in exceptional circumstances the Court can dismiss a case with prejudice. *See e.g., In re McClure,* 69 B.R. 282, 285–86 (Bankr.N.D.Ind.1987). A dismissal with prejudice under § 349(a) must be premised on bad faith conduct that is prejudicial to a creditor. *Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir.1989). A dismissal with prejudice does not effect the Debtor's *eligibility* for a subsequent filing under § 109(g), but does deny the future discharge of those debts dischargeable in that particular case. *See, In re Frieouf,* 938 F.2d 1099, 1103 (10th Cir.1991).

However, as pointed out by the Court in *In re Walker,* 102 B.R. at 644–616, *supra,* inasmuch a dismissal with prejudice only denies the debtor discharge of the debts scheduled in that particular case it does not deny the debtor future access to the bankruptcy court, except as provided by § 109(g), the debtor could be enjoined, pursuant to 11 U.S.C. § 105, or § 349, from filing a new case for one year.[4] *See also,*

---

**4.** Sections 105(a) and (c) of title 11 of the United States Code as discussed above provides as follows:

**§ 105. Power of Court.**

(a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

\* \* \* \* \* \*

(c) The ability of any district judge or other officer or employee of a district court to exercise any of the authority or responsibilities conferred upon the court under this title shall be determined by reference to the provisions relating to such judge, officer, or employee set forth in title 28. This subsection shall not be interpreted to exclude bankruptcy judges and other officers or employees appointed pursuant to chapter 6 of title 28 from its operation.

It is noted in the legislative history to § 105 that it is similar in effect to the All Writs Statute, 28 U.S.C. § 1651, and that the section is repeated at § 105 for the sake of continuity from current law and ease of reference, and to cover any powers traditionally exercised by a bankruptcy court that are not encompassed by the All Writs Statute. H.R.Rep. No. 595 95th Cong., 1st Sess. 316–317 (1977). The All Writs Act provides in pertinent part at 28 U.S.C. § 1651(a) as follows:

The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.

The All Writs Act empowers a federal court "to issue such commands ... as may be neces-

sary or appropriate to effectuate and prevent the frustration of orders it has previously issued. , ..." *U.S. v. New York Telephone Co.,* 434 U.S. 159, 172, 98 S.Ct. 364, 372, 54 L.Ed.2d 376 (1977). Thus, the All Writs Act permits the fashioning of "extraordinary remedies where the need arises...." *Pennsylvania Bureau of Correction v. U.S. Marshal Service,* 474 U.S. 34, 106 S.Ct. 355, 361, 88 L.Ed.2d 189 (1985). It is, however, a residual source of authority to issue writs that are not otherwise covered by statute, and does not authorize courts "to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate." *Id.*

The broad grant of authority pursuant to § 105(a) is not without limit. Equitable powers are limited by the dictates of the Code. *See e.g., Levit, Trustee of V.N. Deprizio Construction Co. v. Ingersoll Rand Financial Corporation,* 874 F.2d 1186, 1198 n. 10 (7th Cir. 1989) ("Whatever force the assertion ... that 'equitable principles govern the exercise of bankruptcy jurisdiction' may have had under the 1898 Act, this approach has no place under the Code to the extent the statute addresses the question."); *In re Longardner & Associates, Inc.,* 855 F.2d 455, 462 (7th Cir.1988) ("Although a reorganization court is indeed a court of equity, ... it is yet constrained by the dictates of the Bankruptcy Act."); and Official *Committee of Equity Security Holders v. Mabey,* 832 F.2d 299, 302 (4th Cir.1987) ("While the equitable powers emanating from § 105(a) are quite important in the general bankruptcy scheme, ... these equitable powers are not a license for a court to disregard the clear language and meaning of the bankruptcy statutes and rules."). The United States Supreme Court stated, "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." *Nor-*

*Lerch v. Federal Land Bank,* 94 B.R. 998, 1000–01 (N.D.Ill.1989) (case dismissed with prejudice for two years); *In re Dilley,* 125 B.R. 189, 197 (Bankr.N.D.Ohio 1991) (one year); *In re McKissie,* 103 B.R. at 193, *supra* (one year); *In re Hundley,* 103 B.R. 768, 771 (Bankr.E.D.Va.1989) (one year); *In re Dyke,* 58 B.R. 714, 718 (Bankr. N.D.Ill.1986) (six months); *In re Bradley,* 38 B.R. 425, 431–32 (Bankr.C.D.Calif.1985) (six months); *In re Damien,* 35 B.R. 685, 687 (Bankr.S.D.Fla.1983) (one year); *contra: In re Taylor,* 77 B.R. 237, 240 (9th Cir.BAP 1987).

 It is observed that the Tenth Circuit in *In re Frieouf,* 938 F.2d at 1102–04 & n. 4, *supra,* expressly rejected the conclusions of the Bankruptcy Court, and the District Court in which the Debtor upon dismissal was denied all access to the bankruptcy court for three years, holding that 11 U.S.C. § 105 did not provide the Court with such broad, equitable powers, and that the plain language of § 349(a) and § 109(g) indicates that the Bankruptcy Court cannot deny a debtor access to the bankruptcy court except by dismissal with prejudice as to the debts scheduled in that particular case pursuant to § 349(a), or for 180 days pursuant to § 109(g).

Although § 105 must be applied cautiously, and cannot be used to exceed the express statutory boundaries of the Bankruptcy Code, this Court disagrees with the conclusions reached by the Court in *In re Frieouf,* 938 F.2d at 1102–04 & N. 4, *supra,* that § 105 does not provide the Bankruptcy Court with the equitable power to enjoin future filings. Section 105 is similar to the All Writs Statute. It empowers a court to issue such commands as are necessary and appropriate to prevent frustration of orders it has previously issued, and to permit the fashioning of extraordinary remedies when the need arises. *See,* footnote 4, *supra.*

Thus, even assuming *arguendo,* (without so concluding), that the *Frieouf* Court is correct and that § 349(a) does not permit a dismissal that prohibits the filing of a new case, except as expressly provided in § 109(g), the Court nevertheless concludes that § 105 empowers this Court to enjoin future filings to prevent abuse of the bankruptcy process. Even if the dismissal of this case were with prejudice, and if the debts scheduled in the present case could not be discharged in a subsequent case, this would not render the Debtor ineligible to file a new case pursuant to § 109(g), and the automatic stay in the new case would still prevent the creditors of the debtor from proceeding to enforce and realize upon their liens secured by such nondischargeable debt, until the stay was modified or vacated. *See,* 11 U.S.C. § 362(a)(4), (5). The practical result would be to permit further serial filings until a fact situation arose which would permit the Court to invoke § 109(g).

The Court must preserve the integrity of the Bankruptcy system and prevent the abusive use of the Bankruptcy system invoked only to thwart the legitimate rights of creditors, and preclude an unwarranted congestion of its docket by enjoining the Debtor from again filing another chapter 13 case in the near future. Because 11 U.S.C. § 109(g) is not applicable, the Court will rely on its equitable powers under 11 U.S.C. § 105 in fashioning an appropriate remedy to effectuate this order of dismissal and enjoin the Debtor from filing another chapter 13 case for the next six months. It is therefore,

ORDERED, that this chapter 13 case is dismissed for cause pursuant to 11 U.S.C. § 1307(c) as being filed in bad faith. And it is further,

ORDERED, pursuant to 11 U.S.C. § 105, that the Debtor is hereby enjoined from filing a bankruptcy petition under any chapter of the Bankruptcy Code for a period to and including July 10, 1992. And it is further,

ORDERED, that the Clerk is directed to not accept any such petition filed by the Debtor.

*west Bank Worthington v. Ahlers,* 485 U.S. 197, 108 S.Ct. 963, 968–69, 99 L.Ed.2d 169 (1988). Thus, although § 105 grants equitable powers to bankruptcy courts, the courts must proceed with great caution, as there are limits to the power.

The Court shall enter this Order on a separate document pursuant to Fed. R.Bk.P. 9021 and distribute the same to all creditors.