**In re Roy L. STANDFIELD and Delois Standfield, Debtors.**

**Bankruptcy No. 93 B 00683.**

United States Bankruptcy Court, N.D. Illinois, E.D.

March 18, 1993.

Gary S. Mueller, McKown, Fitzgerald, Zollner Buch, Hutchison & Ruttle, Joliet, IL, for Members Equity Credit Union.

Jerome J. Kornfeld, Chicago, IL, for Roy L. Standfield and Delois Standfield, debtors.

Craig Phelps, Chapter 13 Trustee, Chicago, IL.

### MEMORANDUM OPINION

JOHN H. SQUIRES, Bankruptcy Judge.

This matter comes on to be heard on the motions seeking relief from the automatic stay of 11 U.S.C. § 362(a) filed by Members Equity Credit Union ("Members") and Amerifed Federal Savings Bank ("Amerifed"), and the responses filed by the Debtors through their attorney, Jerome J. Kornfeld ("Kornfeld"). Members also seeks certain declaratory relief and sanctions under Federal Rule of Bankruptcy Procedure 9011. The Debtors seek confirmation of their Chapter 13 plan and an award of damages, costs and fees against Members and its attorneys pursuant to 11 U.S.C. § 362(h).

For the reasons set forth herein, the Court having considered all the evidence, pleadings and exhibits, does hereby grant the motions for relief from the automatic stay. Members' additional relief under Bankruptcy Rule 9011 is allowed, and sanctions are entered against Kornfeld in the amount of $1,537.50 for reasonable attorney's fees and costs incurred by Members. In addition, the instant Chapter 13 case is dismissed with prejudice to any future filings for 180 days pursuant to 11 U.S.C. § 349(a), but without prejudice to the Debtors' pending Chapter 7 case. Confirmation of the Debtors' plan is denied pursuant to 11 U.S.C. § 1325. The relief requested against Members and its attorneys under section 362(h) is also denied.

### I. JURISDICTION AND PROCEDURE

The Court has jurisdiction to entertain these matters pursuant to 28 U.S.C. § 1334 and General Rule 2.33(A) of the United States District Court for the Northern District of Illinois. All matters constitute core proceedings under 28 U.S.C. § 157(b)(2)(A), (G), (L) and (O).

### II. FACTS AND BACKGROUND

■ In an effort to expedite the trial, the Court advised the attorneys for all parties of its intent to take judicial notice of the filing and contents of the relevant parts of the records in both of the Debtors' cases. No objections were made by any party. The Court can take proper judicial notice of the existence and filing of the papers constituting the records in both of the Debtors' cases. See Federal Rule of Evidence 201 and Federal Rule of Bankruptcy Procedure 9017. The bankruptcy court is duty bound to take judicial notice of its records and files. In re Snider Farms, Inc., 83 B.R. 977, 986 (Bankr. N.D.Ind.1988). Verified schedules and statements filed by Debtors are not just pleadings, motions or exhibits, they contain evidentiary admissions. In re Earl, 140 B.R. 728, 730 n. 2 (Bankr.N.D.Ind.1992); In re Cobb, 56 B.R. 440, 442 n. 3 (Bankr. N.D.Ill.1985). In particular, the docket entries show a summary of what has occurred in the two cases.

### A. *Case No. 91–09198—The First Case*

The Debtors filed their first Chapter 13 petition on April 29, 1991. They were represented by their former attorney, John A. Reed ("Reed"). On May 20, 1991, they filed a plan which proposed to pay one hundred percent of all allowed claims (priority, secured and unsecured) by paying $1,400.00 a month to the Chapter 13 Standing Trustee (the "Trustee") for thirty-one months, and by directly paying their currently accruing post-petition mortgage payments shown on their statement of income and expenses. The case was originally assigned to the Honorable David H. Coar. Judge Coar confirmed an amended plan on September 16, 1991, which provided for payments to the Trustee of $873.00 a month for sixty months.

The Debtors fell behind in their required payments and Members, which held liens on various items of collateral, including a junior mortgage encumbering the Debtors' homestead property, filed a motion to modify the automatic stay on December 16, 1991. That motion was continued before the undersigned bankruptcy judge after reassignment on January 1, 1992. On March 6, 1992, an agreed order was entered in which the parties stipulated that the Debtors had made all the required payments through November 1991. The December 1991 mortgage payment was to be paid by March 13, 1992. The Debtors tendered the January and February 1992 monthly mortgage payments in court. The order further provided that all subsequent payments were to be due and paid on or before the 20th day of each calendar month.

On March 27, 1992, Members filed a second motion to modify the automatic stay alleging nonpayment. The parties disputed the amount of Members' remaining unpaid claim, and the Debtors asserted that Members' attorney's fees were excessive. This motion was continued by agreement for ruling on July 31, 1992, when an order was entered (the "July 31 Order"). The July 31 Order included certain terms and conditions sometimes referred to as "drop dead" or "doomsday" provisions. Commencing with the payments that otherwise would have accrued under Members' mortgage beginning in July 1992, the drop dead provision provided for an automatic lifting of the automatic stay without further court hearing, upon future defaults in monthly payments to be made by the Debtors, after notice by Members to the Debtors of the defaults. The July 31 Order also allowed for the cure of such defaults within a certain period.

On July 31, 1992, Reed also moved to withdraw as the Debtors' attorney. The Debtors so stipulated and retained substitute counsel to represent them, Marshall Levin ("Levin"). Thereafter, on August 20, 1992, pursuant to Federal Rule of Bankruptcy Procedure 1017(d), Levin converted the case to Chapter 7 by filing a notice of conversion. Prior thereto, on July 10, 1992, Amerifed filed its first motion to modify the automatic stay alleging the Debtors' nonpayment on the senior mortgage it held. On August 21, 1992, Amerifed's motion was allowed.

On September 11, 1992, the Trustee filed a final report and account. It showed the Debtors had paid the Trustee under the plan in excess of $9,625.00, of which Members had received $3,960.03. The balance of the plan payments had been applied to pay Reed's fees, the Trustee's statutory costs and fees, and ITT Thorpe, another secured creditor holding liens on other collateral. No payments were disbursed to any unsecured claimants. On October 2, 1992, the Trustee's final report and account was approved. Thereafter, on October 26, 1992, an order was entered establishing a new meeting of creditors on November 20, 1992, in the superseding Chapter 7 case, pursuant to 11 U.S.C. § 341. January 19, 1993 was fixed as the new date under Federal Rules of Bankruptcy Procedure 4004 and 4007 for filing objections to discharge or dischargeability determination complaints.

On January 8, 1993, the Debtors, represented by Levin, filed an emergency motion to enforce the automatic stay, contending that Members had provided defective or ineffectual notice under the drop dead pro-

vision of the July 31 Order. Members' attorney had sent a notice advising of a hearing to foreclose its mortgage in state court. The Court denied the Debtors' motion without prejudice to the Debtors to pursue any appropriate relief from the state court, finding that there was adequate notice sent under the terms of the July 31 Order. On January 14, 1993, the Chapter 7 trustee filed a no-asset report. A discharge order was administratively issued by the Bankruptcy Clerk's Office on March 4, 1993, but not docketed until March 15, 1993.

**B.  Case No. 93–00683—The Second Case**

Rather than appeal or ask for rehearing on the Court's denial of their January 8, 1993 motion, the Debtors, now represented by Kornfeld, filed a new Chapter 13 petition and plan on January 12, 1993. This plan proposes to pay $606.00 a month to the Trustee for sixty months. Their attached budget or statement of income and expenses further provides that the Debtors are to directly pay various current accruing expenses, $647.00 per month on their first mortgage held by Amerifed, and $514.00 on their second mortgage to Members. The plan proposes to pay one hundred percent dividend to all priority, secured and unsecured creditors. The Debtors value the homestead property at $77,000.00, subject to a scheduled claim of Amerifed of $43,-000.00 on its current remaining balance, plus $11,646.00 in pre-petition arrearages. The Debtors also reference a $27,000.00 claim held by Members for the current balance on its mortgage and arrearages of $3,201.00. Notwithstanding these figures, however, their summary schedule of all debts lists only a total of $30,532.00 in secured claims.

On February 5, 1993, Members filed the instant (and third) motion. On February 19, 1993, Amerifed filed its instant (and second) motion. A hearing on confirmation of the plan as well as a hearing on the motions was held on March 5, 1993.

Debtor Delois Standfield was the only witness who testified. She explained the present and past employment of both her and her husband, the prior injury and ill-ness of her husband, and that he recently received a raise in his compensation as a truck driver. She stated that she was not aware that the July 31 Order was entered in the first case, although she had dropped off mortgage payments to Members at Reed's office. She claims she did not receive any notice from Members that it was proceeding with the foreclosure. Although she disputes the exact amount owed Members, she estimated the balance owed it on its remaining claim at approximately $23,-000.00. She admitted she and her husband tendered no mortgage payments to Amerifed since June 1991, until the filing of the second case in January 1993. She estimates the balance owed Amerifed at between $40,000–50,000. Her estimate of the current value of the subject property is $74,000.00.

## III.  ARGUMENTS OF THE PARTIES

### A.  Members' Instant Motion

Members alleges that its scheduled state court foreclosure sale is stayed by the filing of the instant case; that it suffers damage by continuance of the automatic stay; and that the July 31 Order in the first case effectively provided that the underlying debt owed Members would not be discharged by reason of 11 U.S.C. § 523(a)(10). Members further argues that 11 U.S.C. § 729(a)(9) provides that a debtor who has brought a bankruptcy petition under Chapter 7 may only obtain a discharge once every six years. Because the final report and account in the first case showed that unsecured creditors did not receive any dividends on their claims, there is no reason why the six-year bar of that section should not apply here, thus barring the filing of this case. Members alleges the instant case was filed in bad faith solely to stop the scheduled foreclosure sale. Members additionally contends that the Debtors did not attempt to stay or appeal the January 8, 1993 Order. Thus, the July 31 Order lifting the automatic stay should be given effect in this case. Furthermore, Members alleges that a reasonable inquiry into the files would have revealed that the Debtors' first case was not dismissed. Moreover,

Members contends many of the Debtors' arguments were previously made and rejected in the earlier case, and thus not worthy of reconsideration here. Accordingly, Members requests the automatic stay be lifted in this case to allow the foreclosure sale to proceed; that the debt owed Members be found nondischargeable; and that Kornfeld as the Debtors' attorney, be ordered to pay all reasonable expenses and attorney's fees incurred by Members pursuant to Bankruptcy Rule 9011, for failure to conduct an adequate pre-filing investigation.

### B. Amerifed's Motion

Amerifed alleges that the Debtors are in default under the terms of its mortgage, having failed to make required monthly payments since June 24, 1991, and that its principal balance as of February 9, 1993, was $53,905.39, plus interest with arrearages of $14,497.51. Amerifed argues that the Debtors were unsuccessful in completing their first Chapter 13 plan, thus opting to convert to Chapter 7. Moreover, in their present case, the Debtors have set forth no change in circumstances showing they can complete this Chapter 13 plan which involves greater mortgage arrearages. Amerifed alleges that this case was filed solely to delay the foreclosure sale, and thus the automatic stay should be modified to allow the sale to proceed.

### C. The Debtors' Responses

In their response to Members' motion, the Debtors dispute the amount of the balance claimed by Members. They further assert that by virtue of the first case being converted to Chapter 7, a new order for relief was entered. Hence, a new automatic stay was in effect, notwithstanding the Court's July 31 Order. The Debtors again argue that the notice given by Members pursuant to the July 31 Order was not proper. Therefore, as a result, Members and its attorneys are in violation of the automatic stay by proceeding with the state court foreclosure action, thus, entitling the Debtors to damages and fees under section 362(h). Further, the Debtors allege that they received a discharge on January 21, 1993, in the first case. In addition, they contend the instant case is permissible because their present plan provides for payment of at least seventy percent of their unsecured debt.

In response to Amerifed's motion, the Debtors similarly demand strict proof of the balance of its claimed senior mortgage lien and arrearages. The Debtors argue that there was a sufficient change in circumstances warranting the filing of the instant case because Debtor Roy Standfield was involved in a vehicular accident in Atlanta, Georgia, which required his hospitalization from November 1991, through February 1992. He incurred medical and transportation expenses as a result. The Debtors contend that they can stay current in this case. They offer to provide an agreed default order containing a drop dead provision similar to that contained in the July 31 Order.

## IV. DISCUSSION

### A. Burdens of Proof

■ For all relief requested by the various parties, the standard of proof appears to be by a preponderance of the evidence. With regard to the relief sought under section 362(d), Members and Amerifed have the burden of proof on the issue of the Debtors' equity in the property pursuant to section 362(g)(1). Under section 362(g)(2), the Debtors, opposing such relief, have the burden of proof on all other issues.

■ The Debtors, as plan proponents, have the burden of proof with regard to all elements required for confirmation of their plan under 11 U.S.C. § 1325, including the good faith plan requirements of section 1325(a)(3). Members has the burden of proof on its challenge to the filing of this Chapter 13 petition under 11 U.S.C. § 1307(c) and In re Love, 957 F.2d 1350, 1355 (7th Cir.1992). Similarly, Members has the burden of proof to establish imposition of sanctions against Kornfeld under Bankruptcy Rule 9011. The Debtors have the burden of showing a willful violation of section 362(a) by Members and its attorneys to recover under section 362(h).

■ Because Members expressly, and Amerifed's motion at least impliedly, raises a good faith challenge to the filing of the Debtors' current petition and their plan, same needs to be discussed. The Debtors bear the burden of proof on the issuance of compliance with the criteria of section 1325, including the good faith requirement of their plan. *In re Girdaukas*, 92 B.R. 373, 376 (Bankr.E.D.Wis.1988). Under the totality of circumstances test, the bankruptcy court determines whether or not there has been an abuse of the Bankruptcy Code provisions. *In re Todd*, 65 B.R. 249, 253–255 (Bankr.N.D.Ill.1986). Bona fide change in circumstances may justify finding that a successive filing was proper. *See In re Metz*, 67 B.R. 462 (9th Cir. BAP 1986), *aff'd*, 820 F.2d 1495, 1498 (9th Cir. 1987). It is a misuse of the bankruptcy process to file one case, then, failing to achieve the intended goals, to file a second case. *In re Jackson*, 91 B.R. 473 (Bankr. N.D.Ill.1988). Filing a second case rather than taking an appeal in the first case circumvents the appeal process. *In re Beswick*, 98 B.R. 900, 904 (Bankr.N.D.Ill. 1989); *see also In re Russo*, 94 B.R. 127 (Bankr.N.D.Ill.1988).

### B. *The Serial Filing Phenomenon*

The instant case is but another variant of the serial filing phenomenon. Serial filings occur because of the persistence of debtors and the limits of the text of 11 U.S.C. §§ 109(g) and 349, and the interpretive judicial and legislative gloss thereon. The main effect of a serial filing is to achieve a continuing reimposition of the automatic stay, with attendant delay in the exercise of creditors' rights and remedies. *In re McKissie*, 103 B.R. 189, 191 (Bankr.N.D.Ill. 1989). One incidental effect displayed here is the circumvention of the bankruptcy appellate process. *McKissie*, was a Chapter "26" (two successive Chapter 13 cases—the second of which was filed hours after dismissal of the first), thus distinguishable from the facts of this matter. The *McKissie* approach mandating close judicial scrutiny of serial filings has been followed. *See In re Huerta*, 137 B.R. 356 (Bankr. C.D.Cal.1992); *In re Earl*, 140 B.R. 728

(Bankr.N.D.Ind.1992); *In re Jones*, 105 B.R. 1007 (N.D.Ala.1989). *Huerta* and *Earl* collect many of the relevant cases on the serial filing problems.

Another variant on the serial filing problem includes *In re Dyke*, 58 B.R. 714 (Bankr.N.D.Ill.1986). The *Dyke* court held it had authority to dismiss the debtor's new Chapter 13 case, and enjoin the filing of another case for six months. The debtor in *Dyke* sought dismissal of the first case with intent to file another Chapter 13 petition to invoke the automatic stay. There, the second case was filed even before the first case was dismissed.

■ The instant case before the Court, when coupled with the Debtors' still pending first case, can be described as a "simultaneous Chapter 20" (a Chapter 13 case converted to Chapter 7, coupled with a new Chapter 13 case while the Chapter 7 case remains open). The result here is in contrast to what might be described as a "sequential Chapter 20" (a Chapter 7 case substantially completed, at least to the point of discharge, followed by a Chapter 13 case). The "sequential Chapter 20" has not been rejected and is a viable debtor's strategy. *See Johnson v. Home State Bank*, —— U.S. ——, 111 S.Ct. 2150, 115 L.Ed.2d 66 (1991). *Johnson* did not reach the good faith challenge to the plan because same had not been ruled upon by the district and appellate courts. After *Johnson*, some courts have been more willing to allow a second or third filing by a debtor in an effort to confirm or consummate a Chapter 13 plan. *See In re Hornlein*, 130 B.R. 600 (Bankr.M.D.Fla.1991); *In re Barker*, 129 B.R. 287 (Bankr.M.D.Fla. 1991).

### C. *The Totality of the Circumstances Test Applied*

A quartet of Seventh Circuit decisions have established the "totality of circumstances" test to analyze good faith challenges in Chapter 13 cases, both as to the good faith required for filing a Chapter 13 case under 11 U.S.C. § 1307(c), as well as good faith attacks on Chapter 13 plans

challenged under 11 U.S.C. § 1325(a)(3). The Seventh Circuit's first case construing section 1325 was *In re Rimgale* 669 F.2d 426 (7th Cir.1982). *Rimgale* noted that the basic inquiry should be whether under the circumstances, the case has been an abuse of the provisions, purpose, or spirit of the chapter. *Id.* at 431. In discussing the bankruptcy court's discharge of its duty to evaluate the plan under section 1325(a)(3), *Rimgale* held that the query would have to be made and defined on a case by case basis. *Id.* It set forth a number of nonexclusive questions to guide bankruptcy judges on the plan good faith inquiry: (1) does the proposed plan state the debtor's secured and unsecured debts accurately; (2) does it state the debtor's expenses accurately; (3) is the percentage of repayment of unsecured claims correct; (4) if there are, or if there have been deficiencies in the plan, do the inaccuracies amount to an attempt to mislead the bankruptcy court; and (5) do the proposed payments indicate a fundamental fairness in dealing with the creditors? *Id.* at 432–433.

Applying these queries to the case at bar, it appears the filed schedules are at variance with the summary thereof. There is no evidence to show the Debtors' monthly budget is other than that filed, or that they do not propose to pay all of their unsecured debts. Additionally, there is no evidence of any attempt to mislead the Court. The proposed payments under this plan are less than in the first failed plan which had originally contemplated higher payments for a shorter period. Thus, through these two cases, the Debtors effectively attempt to utilize a one hundred percent Chapter 13 plan and stretch out plan payments from September 1991 when the plan in the first case was confirmed, through January 1998, when the last payment in this plan would be due. This violates and abuses the spirit of 11 U.S.C. § 1322(c), if not its letter. *See Huerta*, 137 B.R. at 371; *In re Thomas*, 123 B.R. 552, 554 (Bankr.W.D.Tex.1991).

The Seventh Circuit's next discussion of the Chapter 13 good faith issue was in *In re Smith* 848 F.2d 813 (7th Cir.1988). Following the court's line of analysis in Chapter 11 reorganizations, *Smith* noted a distinction between good faith in filing a Chapter 13 petition and good faith in proposing a Chapter 13 plan. *Id.* at 816, n. 3. The court noted that both good faith inquiries will often be the same: "[f]requently, in the Chapter 13 context there will be an overlap between the two good-faith inquiries because the debtor's plan must be filed within a very short time after the case is commenced." *Id.* (quoting *In re March*, 83 B.R. 270, 275 (Bankr.E.D.Pa.1988)); *see* Fed.R.Bankr.P. 3015. In *Smith*, the court reiterated the *Rimgale* list and further emphasized that a plan's fundamental fairness can involve the examination of the timing of the bankruptcy filing, the debtor's motive in seeking Chapter 13 relief, and the circumstances under which debts were incurred, as well as whether such debts would be nondischargeable in Chapter 7. *Id.* at 817. Thus, *Smith* noted that all such factors ultimately merge into a generic "totality of the circumstances" test. *Id.* at 818. Thereunder, a debtor's pre-filing conduct is relevant to the good faith inquiry. *Smith* confirmed the *Rimgale* approach, adding additional queries to the nonexclusive list of factors for good faith analysis under section 1325(a)(3).

The additional *Smith* queries do not aid the Debtors' plan in this case. The timing of this filing is suspect at best. The underlying debts to movants were discharged in the first case because no dischargeability complaints or objections to discharge were filed. The Court has considered the relevant factors and matters which took place in the first case, as well as what has occurred in the instant case. This case was filed a mere four days after denial of the Debtors' January 8, 1993 motion. The Debtors have abused the bankruptcy appellate process by effectively end running same via a new filing, rather than seeking an appeal or stay of the Court's Order. There is no doubt that such a dilatory tactic was intended to delay the pending foreclosure sale. Whatever the outer limits of good faith in filing may be, the Debtors have exceeded same in this case.

Approximately two years later, the Seventh Circuit again addressed the good faith requirements of section 1325(a)(3) in *In re Schaitz*, 913 F.2d 452 (7th Cir.1990). *Schaitz* adhered to the totality of circumstances test established by *Rimgale* and *Smith*. In *Schaitz*, however, the case was remanded for a full evidentiary hearing on the good faith challenge because of the starkness of the record before it. The plan was originally confirmed at a hearing at which neither the objecting creditors, their lawyers, nor other representatives were present to test the debtor's motives in filing that plan. Thus, *Schaitz* really stands for the practical proposition that opportunity for an evidentiary hearing needs to be held on good faith challenges in Chapter 13. Same was held here on March 5, 1993.

*Schaitz* conceded questions were unanswered on good faith challenges regarding the precise meaning of good faith in Chapter 13. Therefore, it is not surprising that the most recent Seventh Circuit foray in this murky area occurred less than two years later in *In re Love*, 957 F.2d 1350 (7th Cir.1992). *Love* further discussed the distinction between good faith standards for filing a Chapter 13 petition and for confirmation of a Chapter 13 plan. The bankruptcy court in *Love* had fortuitously applied the totality of circumstances test in making the good faith determination after a full hearing. The Seventh Circuit found no clear error in the record before it, and affirmed both the bankruptcy court and district court decisions dismissing the petition under section 1307(c). The court noted the dual good faith inquiry and stated that the rejection of a plan for lack of good faith does not necessarily lead to a dismissal or conversion of the case under section 1307(c). *Id.* at 1354.

The *Love* court stated that a section 1307(c) good faith challenge places the burden of proof on the objecting party in interest, unlike section 1325(a)(3), which places the burden of proof on the debtor proposing the challenged plan. *Id.* at 1355. Under either analysis, the court noted that the totality of the circumstances test has flexibility as its purpose to afford the bankruptcy judge, who is in the best position to

evaluate the witnesses' credibility against other evidence, to weigh all the evidence in making a good faith determination. *Id.* at 1355. The court further noted that because dismissal is a harsh remedy, the bankruptcy court should be more reluctant to dismiss a petition under section 1307(c) for lack of good faith rather than to reject a plan for lack of good faith under section 1325(a)(3). *Id.* at 1356.

In essence, "the focus of the good faith inquiry under both Section 1307 and Section 1325 is often whether the filing is fundamentally fair to creditors, and more generally, is the filing fundamentally fair in a manner that complies with the spirit of the Bankruptcy Code's provisions." *Id.* at 1357. The court admitted that the totality of circumstances test is somewhat confusing for a bankruptcy court to apply, but stated that as the definition of good faith becomes more precise, the bankruptcy court has less discretion to weigh the evidence in making good faith evaluations. *Id.* Thus, the downside of the totality of circumstances test is a degree of uncertainty, and the court readily acknowledged that the good faith inquiry is both subjective and objective. *Id.*

*Love* added the following additional factors: (1) the nature of the debt; (2) how the debt arose; (3) the debtor's motive in filing the petition; (4) how the debtor's actions affect the creditors; (5) the debtor's treatment of creditors both before and after the petition is filed; (6) whether the debtor has been forthcoming with the bankruptcy court and the creditors; (7) misstatements and omissions contained in the plan; and (8) motive, which can be inferred from a debtor's pre-petition and post-petition conduct. *Id.* at 1357. Thus, all evidence in the record should be, and has been considered here.

The subject debts were incurred long ago pre-petition and secured by mortgages on the Debtors' home. The instant case was filed not only to attempt to save the home from a foreclosure sale, but also to avoid appealing the Court's Order of January 8, 1993, via a new automatic stay issuing in a new case. The actions taken by the Debt-

ors are to delay the moving creditors' exercise of their state court remedies. Once again the Debtors offer drop dead terms. The apparent motive of the Debtors is to again delay the inevitable foreclosure sale.

### D. The Cases on "Simultaneous Chapter 20s"

■ Prior to *Johnson,* there is persuasive authority holding that individuals are ineligible for simultaneous Chapter 13 and Chapter 7 relief, notwithstanding the fact that the Bankruptcy Code does not specifically prohibit the filing of a Chapter 13 case by individuals who are also debtors in a case pending under another chapter. *See* 1 Lundin, *Chapter 13 Bankruptcy.* § 1.68 at 1–104 (1992 and 1993 Supp.) (collecting cases); *In re Fulks,* 93 B.R. 274 (Bankr. M.D.Fla.1988) ("a debtor may not simultaneously maintain a Chapter 7 case and a Chapter 13 case prior to the Chapter 7 discharge"); *Associates Financial Services Corp. v. Cowen,* 29 B.R. 888 (Bankr. S.D.Ohio 1983); *In re Heywood,* 39 B.R. 910 (Bankr.W.D.N.Y.1984). This line of authority logically appeals because voluntary debtors select one chapter for relief under the Bankruptcy Code. Debtors cannot select more than one form of relief in the same case and do not enjoy unlimited conversion rights. Moreover, they cannot convert a case in one chapter to two or more other chapters.

There is a contrary line of authority in which other courts have held that there is no per se bar to filing a Chapter 13 case while a Chapter 7 case is pending. *In re Saylors,* 869 F.2d 1434 (11th Cir.1989) (the debtor is not prohibited from filing a Chapter 13 petition before the Chapter 7 Trustee files a final report in the debtor's Chapter 7 case); *In re Samarrippas,* 107 B.R. 366 (Bankr.M.D.Fla.1989) (there is no absolute prohibition against simultaneous Chapter 7 and Chapter 13 cases); *In re Strause,* 97 B.R. 22 (Bankr.S.D.Cal.1989) (debtor discharged in a Chapter 7 case is not prohibited from filing a Chapter 13 case although the Chapter 7 remains open); *In re Kosenka,* 104 B.R. 40 (Bankr.N.D.Ind.1989) (simultaneous Chapter 13 and Chapter 7 cases not per se prohibited if the discharge

has been entered in the Chapter 7 case. Chapter 13 petition is prohibited prior to discharge in the Chapter 7). This view is not compelling. Carried to its logical extreme, a debtor could file an infinite series of cases after losing an infinite series of stay relief (or other types of) motions, all prior to any of the cases being closed or dismissed. Thus, the *reductio ad absurdum* is complete and the Court rejects this approach. Although the Bankruptcy Code does not expressly prohibit the simultaneous pendency of two or more cases by the same debtor, that omission does not compel allowance of this tactical ploy by debtors who abuse the spirit, if not the letter, of the Code, and incidentally further delay and hinder exercise of creditors' rights and recovery on their claims and collateral.

Filing Chapter 13 during the administration of the Chapter 7 case may be indicative of manipulation of the bankruptcy process. *In re Bumpass,* 28 B.R. 597 (Bankr. S.D.N.Y.1983). When other courts have found that the filing of the second case is purely a delaying tactic intended only to avoid adverse events in the first of the pending cases, courts have dealt harshly with the debtor, granting sanctions and enjoining the debtor from proceeding in the second case. *See In re Lunsford,* 39 B.R. 490 (Bankr.N.D.Ga.1984); *In re Lunsford,* 43 B.R. 184 (Bankr.N.D.Ga.1984). Although the filing of a Chapter 13 case after discharge, but before the closing of a prior Chapter 7 case, is not per se prohibited, it has been held indicative of bad faith under the totality of the circumstances test. *In re Farrington,* 129 B.R. 271 (Bankr. M.D.Fla.1991). In the absence of changed circumstances, where it appears that the debtor is not eligible for Chapter 13, but filed the original Chapter 7 case to create Chapter 13 eligibility, and then to save the debtor's residence at the expense of all other creditors, the debtor was found to have filed the case in bad faith, the plan could not be confirmed, and the case was dismissed. *Id.* at 273.

■ Under the facts of both cases, based on the totality of their circum-

stances, the Court finds that the Debtors filed this second Chapter 13 case in bad faith, and that this plan is also filed in bad faith. The Debtors have not produced sufficient evidence that there was bona fide objective change in their circumstances since the conversion of their first Chapter 13 case to Chapter 7 to justify the filing of this serial case. Debtor Roy Standfield's recent raise is insufficient standing alone. The failure of the Debtors to offer persuasive evidence that they will be more likely to make payments in this case than they failed to make in the first case, allows the Court to reasonably infer and conclude that both the filing of this case and the proposed plan were made solely to delay the foreclosure sale. Debtor Delois Standfield's testimony concerning her belief that the Debtors will be able to make their payments proposed in this case is not credible, given her candid admissions that they made not one payment to Amerifed in the first case, and only paid Members after it sought stay relief from the Court.

From the schedules filed, the Debtors have admitted defaults in their regular current payments to both Members and Amerifed. In light of such a pattern of default in past payments and the failure to make any payments on the first mortgage, the Debtors have not objectively justified the filing of the second case and proposing another plan substantively identical, but with lower payments. There is no adequate showing that the Debtors will be likely to make all payments under, and to comply with, this plan pursuant to section 1325(a)(6).

After losing their motion to reinstitute the automatic stay, the Debtors filed the instant case, rather than take an appeal or seek a stay, thereby circumventing the normal appeal process. Their filed schedules are inconsistent with Delois Standfield's testimony. Their summary of schedules lists only a total of $30,532,00 in secured claims, yet in their Schedule B listing secured creditors, they admit that Amerifed's mortgage claim consists of $43,000.00 in current balance owed and $11,646.00 in arrearages. They scheduled Members' mortgage claim at $27,000.00 for current bal-

ances and $3,201.00 in arrearages. The subject property was listed at $77,000.00, but Delois Standfield testified that, in her opinion, the property was worth $74,000.00. Thus, the schedules do not appear to accurately state the secured debts, nor does this plan or filing indicate a fundamental fairness in dealing with these secured creditors. Under *Smith,* the timing of the instant filing along with their pre-filing conduct in the first case, shows the Debtors' dilatory motive in seeking relief, from which the Court can reasonably draw adverse inferences against the Debtors' good faith.

### E. Remedy for Improper "Chapter 20s"

■ Dismissal of this case, without prejudice to the pending Chapter 7 case, but with prejudice to any future filings for 180 days, can serve as an effective deterrent to the Debtors. Section 109(g) of the Bankruptcy Code provides certain limited relief for such a period for causes not present in this case. Section 349(a) of the Bankruptcy Code, however, provides:

(a) Unless the court, for cause, orders otherwise, the dismissal of a case under this title does not bar the discharge, in a later case under this title, of debts that were dischargeable in the case dismissed; nor does the dismissal of a case under this title prejudice the debtor with regard to the filing of a subsequent petition under this title, except as provided in section 109(f) of this title.

11 U.S.C. § 349(a).

■ It has been held that section 349 clearly affords the bankruptcy court discretionary power to determine that there is cause for dismissal with prejudice. *In re Lerch,* 85 B.R. 491, 494 n. 2 (Bankr.N.D.Ill. 1988), *aff'd, Lerch v. Federal Land Bank,* 94 B.R. 998 (N.D.Ill.1989). A dismissal with prejudice must be premised on bad faith conduct that is prejudicial to a creditor. *Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir.1989). The bankruptcy court can use various factors to determine what may constitute cause. The totality of the circumstances warrants the imposition of dis-

missal of this case with prejudice under section 349, and the prohibition of the filing of another case for a period of 180 days, without prejudice to the Debtors' first case which is still pending. The facts and history of these cases by which the Debtors have attempted to effectuate an improper "simultaneous Chapter 20" show sufficient abuse of the bankruptcy process which is cause for such discretionary application of section 349.

### F. The Effect of the Drop Dead Provision in the July 31 Order and the Debtors' Request for Relief Pursuant to 11 U.S.C. § 362(h)

Provisions such as that contained in the July 31 Order for the automatic lifting of the stay for failure to make currently due mortgage payments, coupled with such notice and opportunity to cure terms, have long been approved and enforced to settle section 362(d) stay relief motions. Such orders containing drop dead provisions are in the nature of settlement agreements between debtors and secured creditors. See In re Franklin, 802 F.2d 324 (9th Cir.1986); In re Springpark Associates, 623 F.2d 1377 (9th Cir.1980), cert. denied, 449 U.S. 956, 101 S.Ct. 364, 66 L.Ed.2d 221 (1980); In re Polries Bros., 49 B.R. 669 (Bankr.D.N.D.1985). To the extent same afford relief from the automatic stay, they are not interlocutory, but final orders. Therefore, they are judgments which may be overturned on appeal only upon a showing of abuse of discretion. See In re Holtkamp, 669 F.2d 505 (7th Cir. 1982).

The Court finds the Debtors' argument that they either did not know of the entry of the July 31 Order or its existence and effect disingenuous. The docket reveals that the July 31 Order was entered on August 6, 1992. Reed withdrew and Levin substituted as counsel for the Debtors on August 20, 1992, when the notice of conversion to Chapter 7 was filed. Rather than promptly file a motion either under Federal Rule of Civil Procedure 59 or 60 and their Bankruptcy Rule analogues 9023 and 9024, and attempt to amend, vacate or seek relief from the July 31 Order, the Debtors waited over five months until January 8, 1993, to argue that the automatic stay should be reimposed because Members' notice was inadequate. The Court is not convinced that the July 31 Order's terms and conditions were not known by the Debtors' former counsel, if not the Debtors. They were bound by its terms and conditions. Because it was never vacated or modified, the July 31 Order remains effective in the first case.

The Court also rejects the Debtors' argument that their voluntary conversion in the first case eviscerated the July 31 Order and a new automatic stay went into effect. The voluntary conversion automatically triggered section 348, but did not change the date of filing the petition, the commencement of the case, or the original order for relief. See 11 U.S.C. § 348(a). The Court notes there is some authority to the contrary, but respectfully declines to follow same. See In re Nichols, 134 B.R. 236 (Bankr.S.D.Ohio 1991). The better view holds that section 348 does not contain any cross-reference to section 362, and there is no statutory or good reason to alter the effect of a prior grant of relief from the stay at conversion. See 2 Lundin, Chapter 13 Bankruptcy, § 8.16 at 8–26—8–27. It has been held where stay relief was granted in a Chapter 13 case, conversion does not require a further hearing to determine whether the Chapter 7 trustee has any interest in the property that was relieved of the stay. In re Williams, 40 B.R. 366 (Bankr.D.Md.1984). The Court is of the view that once the automatic stay is modified or lifted in a case, that final judgment is not automatically vacated or annulled by the subsequent conversion of the case to another chapter. There is no evidence to show Members was in willful violation of the automatic stay when it relied on the drop dead provision of the July 31 Order. Thus, relief under section 362(h) is inappropriate and hereby denied.

### G. The Debtors' Arguments Attacking Members' Notice Under the July 31 Order Are Res Judicata

Once again, the Debtors contend that the notice sent by Members of a

scheduled hearing in the state court foreclosure action was inadequate under the terms of the July 31 Order. Those arguments were initially made by Levin in the first case. Kornfeld's renewal of such arguments is precluded by the doctrine of res judicata, or claim preclusion. All essential elements for application of the doctrine are present: (1) an identity of parties—the Debtors and Members; (2) an identity of the causes of action—both the Debtors' prior motion in the first case and their renewed arguments raised in response to Members' motion here raise the effect of the July 31 Order and its relief from the automatic stay; and (3) a final judgment was entered in the first case when the Court denied the Debtor's motion on January 8, 1993. Thus, the renewal of the same arguments in this case is barred by the doctrine. *See Brown v. J.I. Case Co.*, 813 F.2d 848, 854 (7th Cir.1987), *cert. denied*, 484 U.S. 912, 108 S.Ct. 258, 98 L.Ed.2d 215 (1987); *Shaver v. F.W. Woolworth Co.*, 840 F.2d 1361, 1364 (7th Cir.1988), *cert. denied*, 488 U.S. 856, 109 S.Ct. 145, 102 L.Ed.2d 117 (1988); *In re Energy Cooperative, Inc.*, 814 F.2d 1226, 1230 (7th Cir.1987), *cert. denied*, 484 U.S. 928, 108 S.Ct. 294, 98 L.Ed.2d 254 (1987); *Appley v. West*, 832 F.2d 1021, 1025 (7th Cir.1987). Rather than appeal from that order and seek a stay pending appeal, the Debtors filed the instant case after switching lawyers from Levin to Kornfeld. Although they can easily change attorneys, the Debtors cannot avert proper application of the doctrine through the ploy of filing a serial case with new counsel making the same arguments.

### H. *The Debtors' 11 U.S.C. § 727(a)(9) Argument*

■ The Debtors invoke section 727(a)(9) in defense to Members' motion, contending that this case is permissible because the instant plan proposes to pay more than seventy percent of allowed unsecured claims; is proposed in good faith; and is the Debtors' best effort. Section 727(a)(9) was not applicable when this petition was filed because the Debtors had not yet been granted a discharge in their first case. A discharge did not issue until just prior to the March 5, 1993 hearing and was not docketed until after trial. Although their confirmed plan in the first case provided for a one hundred percent dividend to allowed unsecured claims, they voluntarily converted the first case within a year of its confirmation, the Trustee's final report shows no dividends whatsoever paid to any unsecured creditor claimants, and no discharge under 11 U.S.C. § 1328 was ever issued.

### I. *Members' 11 U.S.C. § 523(a)(10) Argument*

■ Members obliquely argues that the July 31 Order provides for a denial of discharge on Members' mortgage claim and thus is nondischargeable in the instant case. The July 31 Order, however, contained no such provisions concerning dischargeability of Members' claim. Thus, because the order of discharge in the Debtors' first case now has been administratively issued and docketed, section 523(a)(10) is wholly inapplicable in the instant case. Moreover, there was no waiver of discharge executed and filed by the Debtors in their first case, nor has any adversary proceeding been filed to seek a determination of nondischargeability or objecting to discharge.

### J. *Sanctions Under Bankruptcy Rule 9011*

Other courts have sanctioned attorneys for bad faith multiple filings. *See In re Nelkovski*, 46 B.R. 542 (Bankr.N.D.Ill.1985) (dismissal of case included sanctions for the debtor's failure to perform under previous plans and to appear at the first meeting of creditors); *see also In re Crestwell*, 30 B.R. 619 (Bankr.D.D.C.1983). Federal Rule of Bankruptcy Procedure 9011 provides for imposition of sanctions under similar circumstances as Federal Rule of Civil Procedure 11. Bankruptcy Rule 9011 provides in relevant part:

> The signature of an attorney or a party constitutes a certificate that the attorney or party has read the document; ... and that it is not interposed for any improper purpose, such as to harass, or to cause

unnecessary delay, or needless increase in the cost of litigation.... If a document is signed in violation of this rule, the court on motion or on its own initiative, shall impose on the person who signed it, the represented party, or both, an appropriate sanction, which may include an order to pay to the other party or parties the amount of the reasonable expenses incurred because of the filing of the document, including a reasonable attorney's fee.

Fed.R.Bankr.P. 9011.

■ The Debtors' Chapter 13 petition was attached to and filed simultaneously with their schedules and statement of affairs, which were signed by the Debtors. The petition was also signed by Kornfeld, as was the response to the motions to modify the stay. Thus, the potential for sanctions under Bankruptcy Rule 9011 was triggered by those filings.

■ The Court has jurisdiction to impose sanctions under Bankruptcy Rule 9011. *In re TCI, Ltd.*, 769 F.2d 441, 448 (7th Cir.1985); *In re Chicago Midwest Donut, Inc.*, 82 B.R. 943 (Bankr.N.D.Ill.1988). It is well established that "[t]he standard for imposing sanctions under Rule 11 is an objective determination of whether the sanctioned party's conduct was reasonable under the circumstances." *Brown v. Federation of State Medical Bds.*, 830 F.2d 1429, 1435 (7th Cir.1987). If counsel files pleadings that are not reasonably based in law or in fact, or that are designed to harass, then the court "upon motion or upon its own initiative shall impose ... an appropriate sanction." *Id.* at 1433. Rule 11 establishes duties to both the opposing side and the legal system as a whole that is designed to curb needless expense and delay, and to free the courts from litigation that strains scarce judicial resources. *Mars Steel Corp. v. Continental Bank N.A.*, 880 F.2d 928, 932 (7th Cir.1989). *Mars Steel* also notes that "counsel may not drop papers into the hopper and insist that the court or opposing counsel undertake bothersome factual and legal investigation." *Id.* at 932. This point is especially relevant because Kornfeld has cited no

case or other supporting authority in the response to the instant motions. He merely invokes section 362(h).

■ "A signature certifies to the court that the signer has read the document, has conducted a reasonable inquiry into the facts and the law and is satisfied that the document is well grounded in both, and is acting without any improper motive." *Business Guides, Inc. v. Chromatic Communications Enterprises, Inc.*, 498 U.S. 533, 540, 111 S.Ct. 922, 929, 112 L.Ed.2d 1140 (1991). An objective standard is used to assess whether the party or attorney acted with an improper purpose. *Thornton v. Wahl*, 787 F.2d 1151 (7th Cir.1986) *cert. denied*, 479 U.S. 851, 107 S.Ct. 181, 93 L.Ed.2d 116 (1986). The Seventh Circuit has interpreted Rule 11 as creating four requirements:

> "There must be 'reasonable inquiry' into both fact and law; there must be good faith (that is, the paper may not be interposed 'to harass'); the legal theory must be objectively 'warranted by existing law or a good faith argument' for the modification of existing law; and the lawyer must believe that the complaint is 'well grounded in fact'. The attorney filing the complaint or other paper must satisfy all four requirements."

*Thompson v. Duke*, 940 F.2d 192, 195 (7th Cir.1991) (quoting *Szabo Food Service, Inc. v. Canteen Corp.*, 823 F.2d 1073, 1080 (7th Cir.1987)).

■ In *Crestwell*, Bankruptcy Rule 9011 was applied and an attorney was sanctioned for improperly filing a Chapter 13 petition solely to invoke the stay and prevent a foreclosure sale. Like *Crestwell*, the Court finds that this serial Chapter 13 case was filed solely for the purpose of delaying the pending foreclosure proceeding after the Debtors' motion to reimpose the stay was denied in the first case. In addition, in the response in opposition to Members' instant motion, signed by Kornfeld, he alleged that in the first case, a discharge was granted on January 21, 1993, and that he was so advised by an unnamed member of the Bankruptcy Clerk's Office. This is a blatant misrepre-

sentation and a clear indication of an inadequate factual and legal pre-filing investigation. Even a cursory examination of the docket in the first case shows no order of discharge was then entered. None could have been entered when the instant Chapter 13 case was filed on January 12, 1993 because the objections and the dischargeability determination cutoff date of January 19, 1993 had not yet expired. Kornfeld's apparent failure to personally check and verify the court records and docket in this case is precisely the type of conduct proscribed by Bankruptcy Rule 9011, warranting an imposition of sanctions against him. Because Kornfeld is one of the more senior and experienced regular practitioners appearing before the Court, his error and omission with resultant false pleading is even more glaring and inexcusable.

Sanctions will serve to compensate Members for its costs and attorney's fees and to deter Kornfeld from embarking on a similar course in the future. The Court does hereby impose sanctions upon Kornfeld pursuant to Bankruptcy Rule 9011 in the amount of $1,437.50 for reasonable attorney's fees incurred by Members for 11.5 hours of time at $125.00 per hour, plus $100.00 in publication costs incurred incidental to the scheduled foreclosure sale.

## V. CONCLUSION

For the foregoing reasons, the Court denies confirmation of the Debtors' plan under 11 U.S.C. § 1325 and allows the motions to modify the automatic stay. Additionally, the Court dismisses the instant Chapter 13 case with prejudice to any future filings for 180 days pursuant to 11 U.S.C. § 349(a), but without prejudice to the pending Chapter 7 case (No. 91 B 09198). The Court also imposes sanctions under Bankruptcy Rule 9011 on Jerome J. Kornfeld in the amount of $1,537.50 in favor of Members. The Debtors' request for an award of damages, costs and attorney's fees under 11 U.S.C. § 362(h) is denied.

This Opinion serves as findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

See written Order.

## ORDER

For reasons set forth in a Memorandum Opinion dated the 18th day of March, 1993, the Court hereby grants the motions of Members Equity Credit Union and Amerifed Federal Savings Bank for relief from the automatic stay under 11 U.S.C. § 362(a). The additional relief sought by Members Equity Credit Union for sanctions pursuant to Federal Rule of Bankruptcy Procedure 9011 is allowed. Sanctions are hereby entered against Jerome J. Kornfeld in the sum of $1,537.50 for reasonable attorney's fees and costs incurred by Members Equity Credit Union.

It is further ordered that the instant Chapter 13 case is dismissed with prejudice to any future filings for 180 days pursuant to 11 U.S.C. § 349(a), but without prejudice to the Debtors' pending Chapter 7 case (No. 91 B 09198). Confirmation of the Debtors' plan is denied pursuant to 11 U.S.C. § 1325. The relief requested against Members Equity Credit Union and its attorneys pursuant to 11 U.S.C. § 362(h) is also denied.